# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-1613


HENRY MOREAU AND
GERALINE MOREAU, ET AL.

VERSUS

AVOYELLES PARISH SCHOOL BOARD


************

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT,
PARISH OF AVOYELLES, NO. 2004-6842-B,
HONORABLE WILLIAM J. BENNETT, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Chief Judge Ulysses G. Thibodeaux and Jimmie C. Peters and Marc T. Amy, Judges.

**AFFIRMED.**


**Rodney M. Rabalais**
**Attorney at Law**
**Post Office Box 447**
**Marksville, LA  71351**
**(318) 253-4622**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Henry and Geraline Moreau, et al.**


**Rémy V. Starns**
**Attorney at Law**
**Post Office Box 231**
**Logansport, LA  71049**
**(318) 697-9400**

**COUNSEL FOR DEFENDANT/APPELLANT:**
    Avoyelles Parish School Board

**Richard B. Easterling**
**450 Laurel Street, Suite 1900**
**Baton Rouge, LA  70801**
**(225) 336-5200**
**AMICUS CURIAE COUNSEL FOR:**
    Louisiana Charter School Association

**Robert L. Hammonds**
**Hammonds & Sills**
**Post Office Box 65236**
**Baton Rouge, LA  70896**
**(225) 923-3462**
**AMICUS CURIAE COUNSEL FOR:**
    Louisiana School Boards Association

PETERS, J.

The Avoyelles Public Charter School (Charter School) and a number of Avoyelles Parish residents and taxpayers who are also parents[1] of children attending the Charter School filed a mandamus action against the Avoyelles Parish School Board (School Board), seeking, among other relief, an order compelling the School Board to provide free transportation to and from the Charter School for its students who live more than one mile from the school. The School Board responded to this suit by filing an answer, a motion to require the plaintiffs to post a bond, and four exceptions. Following a hearing, the trial court rejected the School Board's motion for bond and all of the exceptions and issued the requested writ.[2] The trial court then designated the judgment as a final judgment for the purposes of appeal, and the School Board timely perfected this appeal, asserting three assignments of error. The plaintiffs answered the appeal, seeking an award of attorney fees for the work performed on appeal.[3] For the following reasons, we affirm the trial court's judgment in all respects and reject the plaintiffs' request for an award of attorney fees.

**DISCUSSION OF THE RECORD AND UNDISPUTED FACTS**

The Charter School and the parents filed the mandamus action on September 2, 2004, and the trial court disposed of the exceptions and preliminary motion and granted the writ of mandamus at a September 9, 2004 hearing. The hearing produced a sparse evidentiary record, but certain matters are not disputed by the parties.

The basic law applicable to the dispute now before us is found in the General

---

[1]The other plaintiffs were identified as Henry and Geraline Moreau, Douglas and C.C. Ducote, Joey and Donna Ledet, Bill and Angel Cazelot, Brent and Melissa Landry, Jonathan and Kim Dupree, Patrick and Erica Barton, Dale and Debra Dupuy, and David and Monica Johnson.

[2]In this appeal, the School Board questions only the trial court's ruling on the mandamus application and two of the exceptions.

[3]The Louisiana School Boards Association filed an *amicus curiae* brief in this matter as did the Louisiana Charter School Association.

School Law, La.R.S. 17:1, *et seq.* That series of statutes creates, among other legal entities, the Louisiana State Board of Elementary and Secondary Education (BESE Board) as a corporate body with supervisory authority over the state educational system in such matters as administration, educational curriculum, teacher certification, testing procedures, organization, services, and finances. La.R.S. 17:1, 6, and 7. It also creates parish school boards as corporate bodies with authority to administer the public schools within their territorial jurisdictions. La.R.S. 17:51, *et seq.*[4] The School Board derives its existence from this statutory authority.

The Charter School Demonstration Programs Law, enacted by 1997 La. Acts No. 477, § 1, is found in the General School Law at La.R.S 17:3971, *et seq.* Its purpose is to provide the educational community with a framework for creative educational experimentation designed to improve the overall educational system. La.R.S. 17:3972. When originally enacted, La.R.S. 17:3973(2) provided for the creation of four types of charter schools.[5] Of the four types, only the Type 2 charter school does not provide for the local school board's involvement as a party to the charter agreement creating the school. La.R.S. 17:3973(2)(b). Its existence is based on a charter entered into between the BESE Board and a nonprofit corporation formed to operate the school. La.R.S. 17:3973(2)(b)(ii). Thus, a Type 2 charter school is the exception to the general rule that the local school board has the administrative authority over the public schools within its jurisdictional boundaries. The Charter School is a Type 2 school, and it opened its doors in Avoyelles Parish in the fall of 2000. By the beginning of the 2004 academic year, it had expanded its activities to

---

[4]The original authority for the creation of parish school boards was found in Article XII, Section 10, of the Louisiana Constitution of 1921 and was retained in La.Const. art. VIII, § 9.

[5]The legislature added a fifth type of charter school by 2003 La. Acts No. 9, § 1, effective November 6, 2003, by adding La.R.S. 17:3973(2)(b)(v) to La.R.S. 17:3973.

offer educational opportunities to students from kindergarten through the ninth grade.

Initially, the School Board provided the Charter School students free transportation to and from school, but from the beginning the two legal entities were at odds concerning the cost of this transportation and the party responsible for that cost. Because the School Board and the Charter School were unable to reach an agreement on this issue, on May 11, 2004, the School Board applied to the BESE Board for relief from its transportation obligation.

In the first sentence of its application to the BESE Board, the School Board stated: "Please accept this letter as the School Board's formal request that BESE exercise its authority pursuant to Statute and excuse the School Board from providing free transportation to the Avoyelles Public Charter School ('Charter School') for economically justifiable reasons." However, in summarizing the request for relief at the end of the application, the School Board stated the following:

> BESE can and should exercise its authority pursuant to La.R.S. 17:158H and excuse the Avoyelles Parish School Board from any free transportation requirement regarding pupils of the Avoyelles Public Charter School for economically justifiable reasons *and allow the Avoyelles Parish School Board to charge its actual costs*, $3.36 per pupil per day, in remuneration for its services.

(Emphasis added.)

The BESE Board heard the application on June 17, 2004, and, on that day, took the matter under advisement and issued an interim ruling as follows:

> On motion of Dr. Stafford, seconded by Ms. Johnson, the Board directed that the Department request an Attorney General's Opinion concerning the authority of BESE to authorize a local school district to charge a fee to transport students to a charter school pursuant to R.S. 17:158. *Avoyelles Parish shall continue to provide transportation to the Avoyelles Public Charter School pending the Attorney General Opinion.* Further, the Board directed BESE staff to provide a list of the school systems that are currently providing transportation to a charter school, what schools systems are charging a fee, and the amount for

3

transportation.

(Emphasis added.)

With the 2004-2005 academic year fast approaching, the School Board chose not to follow the directive of the BESE Board or to await the BESE Board decision on its application for relief. Instead, in August of 2004, the School Board advised the Charter School that, unless it agreed to pay the School Board the amount it was demanding for transportation costs on or before September 17, 2004, all transportation services furnished by the School Board to the Charter School would be terminated effective that date. This unilateral action on the part of the School Board prompted the filing of the instant suit, and it was on this state of affairs that the application for mandamus was heard.

In its three assignments of error asserted on appeal, the School Board argues that the trial court erred in (1) issuing the writ of mandamus because the School Board owes no transportation obligation to the Charter School, (2) rejecting its exception of no cause of action, and (3) rejecting its exception of no right of action.

**OPINION**

The evidence presented at trial consisted of a number of exhibits and a stipulation by the parties to the effect that (1) the School Board had applied to the BESE Board to obtain approval to charge the Charter School for transportation services; (2) the BESE Board heard the application on June 17, 2004, and took it under advisement after passing the resolution previously described; and (3) at the time of the hearing on the mandamus application, the BESE Board had not acted on the application.[6] Based on the exhibits, the stipulation, and the remainder of the

---

[6]The litigants asserted at oral argument that the BESE Board has yet to rule on the School Board's application.

4

record, the trial court rendered its decision.

### *Assignment of Error Number One*

The Charter School's and the parents' legal basis for seeking the writ of mandamus, and the trial court's reason for granting the relief, is La.R.S. 17:158(A)(1), which provides:

> Except as provided by Subsection H of this Section and in accordance with the requirements of Subsection F of this Section, each parish and city school board *shall* provide free transportation for any student attending a school of suitable grade approved by the State Board of Elementary and Secondary Education within the jurisdictional boundaries of the parish or school board if the student resides more than one mile from such school.

(Emphasis added.)

By definition, a charter school is "an independent *public* school that provides a program of elementary or secondary education, or both, established pursuant to and in accordance with [La.R.S. 17:3791, *et seq.*,] to provide a learning environment that will improve pupil achievement." La.R.S. 17:3973(2)(a) (emphasis added). Additionally, because its very existence is derived from a charter entered into with the BESE Board pursuant to La.R.S. 17:3973(2)(b)(ii), one cannot reasonably argue that a Type 2 charter school is not approved by the BESE Board.

In fact, the School Board acknowledges that the Charter School is a BESE Board approved public school. The School Board further acknowledges that Louisiana has a long-standing recognition of the right of elementary and secondary students and their parents to a free education and that included within that concept is the right to free transportation to and from school. Instead, it asserts that a reading of other provisions of the General School Law makes it clear that the legislature never intended for local school boards to absorb the cost of providing the expected free

5

transportation for charter school students. Thus, the issue presented to us involves strictly a matter of law. Appellate review of questions of law is to determine whether the trial court's interpretive decision is legally correct. *Forum for Equality PAC v. McKeithen,* 04-2477, 04-2523 (La. 1/19/05), ___ So.2d ___. Statutory interpretation is performed as required by civil code articles, statutes, and well-established jurisprudential rules.

"These rules of statutory construction are designed to ascertain and enforce the intent of the legislature in enacting the statute." *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695, p. 11 (La. 6/29/01), 808 So.2d 294, 302. The fundamental question in all cases of statutory construction is legislative intent and the reasons that prompted the legislature to enact the law. *Succession of Boyter*, 99-0761 (La. 1/7/00), 756 So.2d 1122. When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. La.Civ.Code art. 9; La.R.S. 1:4. However, when a law is susceptible of different meanings, "it must be interpreted as having the meaning that best conforms to the purpose of the law." La.Civ.Code art. 10.

The meaning and intent of a law is determined by considering the law in its entirety and all other laws concerning the same subject matter and construing the provision in a manner that is consistent with the express terms of the statute and with the obvious intent of the lawmaker in enacting it. *Boyter*, 756 So.2d 1122. The statute must therefore be applied and interpreted in a manner that is logical and consistent with the presumed fair purpose and intention the legislature had in enacting it. *Id*. Courts should give effect to all parts of a statute and should not adopt a

6

statutory construction that makes any part superfluous or meaningless, if that result can be avoided. *Id.* Furthermore, "'the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result.' *Smith v. Flournoy*, 238 La. 432, [447,] 115 So.2d 809, 814 (1959), *reh'g denied.*" *First Nat'l Bank of Boston v. Beckwith Mach. Co.*, 94-2065, p. 8 (La.2/20/95), 650 So.2d 1148, 1153. With these concepts in mind, we turn to the analysis of the School Board's first assignment of error.

To fully determine the proper interpretation of La.R.S. 17:158(A)(1), we must first consider the content of the entire statute, and particularly the two subsections referenced therein. The second of these two subsections, La.R.S. 17:158(F), extends the free transportation obligation of the school board "to eligible public and nonpublic school students," but excludes "any student . . . who attends a school which discriminates on the basis of race, creed, color, or national origin." The remaining subsection, La.R.S. 17:158(H), recognizes that a school board may suffer a financial hardship in fulfilling the free transportation mandate and therefore provides a procedure by which a school board may seek relief from that obligation. Louisiana Revised Statutes 17:158(H)(1) provides:

> No parish or city school board shall eliminate or reduce the level of transportation services provided to students as required by the provisions of this Section *except for economically justifiable reasons approved* in accordance with the provisions of this Subsection *by the State Board of Elementary and Secondary Education.*

(Emphasis added.)

Louisiana Revised Statutes 17:158(H)(2) details the information a school board

must submit to the BESE Board to be considered for relief from its transportation obligation, and La.R.S. 17:158(H)(3) provides for the action to be taken by the BESE Board. The latter provision provides as follows:

> The State Board of Elementary and Secondary Education shall take under review and consideration any request by a parish or city school board for approval to reduce or eliminate student transportation services submitted in compliance with the provisions of this Subsection, however no such approval shall be granted by the board until the state superintendent of education has certified the accuracy and validity of the information submitted by the parish or city school board.

In its statutory scheme, La.R.S. 17:158 also addresses the hardship that may be imposed on a student and his family if the BESE Board grants a local school board's request to be relieved of its obligation to provide that student with transportation to and from school. Louisiana Revised Statutes 17:158(C) provides:

> If transportation is not provided by the parish or city school board by reason of economically justifiable reasons approved by the State Board of Elementary and Secondary Education in accordance with the provisions of Subsection H of this Section, the Department of Education, in accordance with the provisions of Subsection D hereof, shall reimburse the parent or tutor of any student who resides more than one mile from the school attended by the student to the extent and in the amounts that funds are so appropriated by the legislature, but in no event shall such reimbursement exceed one hundred twenty-five dollars per student or three hundred seventy-five dollars for any one family.

Louisiana Revised Statutes 17:158(D) simply provides the mechanism by which a claim for reimbursement can be asserted.

Thus, La.R.S. 17:158 provides a scheme whereby a city or parish school board is required to provide all students (1) who attend a BESE Board approved elementary or secondary school within its jurisdictional boundaries and (2) who live more than one mile from that school with free transportation to and from the school. The free transportation requirement extends to all approved schools within the jurisdictional boundaries and is not limited to those schools under the administration of the local

8

school board. La.R.S. 17:158(F). The only permissible non-fiscal reason for denying this free transportation right to all eligible students is if the school involved discriminates against anyone on the basis of race, creed, color, or national origin. *Id.* In a situation where this free transportation obligation creates a financial hardship on the local school board, it can apply to the BESE Board for relief from its obligation. La.R.S. 17:158(H)(1). In the event the local school board is successful in obtaining relief from the BESE Board, the statute further provides a mechanism by which the student denied free public transportation can be reimbursed for the necessary transportation expenses. La.R.S. 17:158(C) and (D). The trial court found that, when construing La.R.S. 17:158 in its entirety, the legislature clearly and unambiguously intended to impose the free transportation burden on the local school board, but to provide a relief mechanism from that burden if the school board could convince the BESE Board that it had economically justifiable reasons to eliminate or reduce the level of transportation to eligible students.

At trial and on appeal, the School Board asserts that La.R.S. 17:158 is not clear and unambiguous when read in conjunction with other provisions of the General School Law, specifically La.R.S. 17:3991(D) and La.R.S. 17:1990(B)(3). As we appreciate the School Board's argument, it asserts that the trial court erred in concluding that the reference to "eligible" students in La.R.S. 17:158(F) simply refers to those students who meet the requirements set forth in La.R.S. 17:158(A)(1). According to the School Board's argument, the insertion of "eligible" in La.R.S. 17:158(F) indicated an intent on the part of the legislature to graft an additional condition on a school board's free transportation requirement. That requirement, according to the School Board, is the furnishing by the legislature of sufficient funds

9

to the local school board to pay for the added transportation costs for students not under the school board's administrative umbrella. Absent that funding, the School Board argues, it has no statutory duty to provide charter school students with free transportation.[7]

The first of the two statutes that the School Board asserts supports its argument, La.R.S. 17:3991(D), is a part of the Charter School Demonstration Programs Law. In its entirety, La.R.S. 17:3991 sets forth the requirements and limitations of charter schools and provides a procedure for the renewal of, amendment to, or revocation of the school's charter. The subsection at issue provides:

> A charter school may negotiate with the local school board in whose jurisdiction it is located for use of facilities and the operation and maintenance thereof, *for pupil transportation*, and for *other support services* provided by the board to other public schools in the system.

La.R.S. 17:3991(D) (emphasis added).

The School Board suggests that the reference to "pupil transportation" indicates the legislature's intent to require charter schools to pay for transportation to and from school. In other words, La.R.S. 17:3991(D) would not be necessary if the legislature intended for the school board to furnish free transportation pursuant to La.R.S. 17:158(A)(1). We disagree with this interpretation.

We first note that the language of La.R.S. 17:158(A)(1) is mandatory, while the language of La.R.S. 17:3991(D) is discretionary. Additionally, while La.R.S. 17:158(A)(1) addresses the specific issue of transportation to and from school, La.R.S. 17:3991(D) addresses the general issue of "pupil transportation" and "other support services." As previously discussed, the concept of free education in

---

[7]The record now before us does not contain sufficient evidence to determine the exact financial status of the litigants, including the extent of state funding. However, the evaluation of the funding issue is not necessary to resolve the issues on appeal.

10

Louisiana includes as a *primary* element the transportation to and from school. We interpret the legislative intent of La.R.S. 17:3991(D) to be the providing of supportive transportation services such as for field trips and athletic events. We are unable to read La.R.S. 17:3991(D) as evidence that the legislature intended to deprive charter school students of the same benefit of free transportation to and from school provided to other public and nonpublic school students.

Nor do we find that the School Board's reliance on La.R.S. 17:1990(B)(3) supports its position. Louisiana Revised Statutes 17:1990 was added to the General School Law by 2003 La. Acts No. 9, § 1, effective November 6, 2003, and establishes Recovery School Districts.[8] These are school districts whose purpose is "to provide an appropriate education for children attending any public elementary or secondary school operated under" an existing school system that has failed to meet the accountability standards set forth in La.R.S. 17:10.5. La.R.S. 17:1990(A)(1). When a failing school is removed from an existing school system and transferred to the Recovery School District, it is operated as a Type 5 charter school. La.R.S. 17:3973(2)(b)(v)(aa). Louisiana Revised Statutes 17:1990(B)(3) provides that the Recovery School District "*may require*" the local school board whose system failed to meet the accountability standards "to provide school support or student support services . . . including but not limited to student transportation" and that "[i]f a dispute arises between the school district and the system providing such services regarding the cost of such services to be reimbursed, the commissioner of administration or his designee shall determine the cost to be reimbursed." (Emphasis added.) The School Board points to this provision as further evidence that the

_____

[8]As mentioned in footnote 5, the same Act created the fifth type of charter school by adding La.R.S. 17:3973(2)(b)(v) to La.R.S. 17:3973.

11

legislature never intended for a local school board to provide free transportation to charter school students under La.R.S. 17:158(A)(1).

We disagree with the School Board's position in this regard. Far from the meaning suggested by the School Board, La.R.S. 17:1990(B)(3), in our opinion, reinforces the view that La.R.S. 17:158(A)(1) applies to all charter schools except Type 5 charter schools. Had the legislature intended for transportation for Type 2 charter schools to be contingent on the legislature fronting the costs of such transportation, or the charter school paying that cost, it would simply have said so as it did in the case of Type 5 charter schools.

In summary, as did the trial court, we find no conflict between the obligation imposed by La.R.S. 17:158(A)(1) and either La.R.S. 17:3991(D) or La.R.S. 17:1990(B)(3). Nor do we place any significance on the fact that the statutes creating charter schools and Recovery School Districts were enacted years after the last amendment to La.R.S. 17:158. The School Board suggests in argument that these latter expressions of the legislative will must be construed in light of the fact that, before their enactment, the legislature had no need to consider their impact on the finances of a local school board. While the legislature may not have contemplated the existence of charter schools or Recovery School Districts when considering prior amendments to La.R.S. 17:158, it obviously considered the financial impact that a school not under the school board's jurisdiction might have on a local school board by providing the relief still available in La.R.S. 17:158(H). In other words, the legislature has provided the School Board with a procedure by which it can seek relief from its obligation imposed by La.R.S. 17:158(A)(1).

The very limited issue before the trial court, and now before this court, is not

12

whether the School Board is ultimately entitled to relief from its obligation to transport the Charter School students to and from school. That is a decision to be made by the BESE Board pursuant to La.R.S. 17:158(H). This court, as was the trial court, is faced (1) with undisputed proof that the Charter School is a BESE Board approved school, (2) with no evidence that it is guilty of any discriminatory activities prohibited by La.R.S. 17:158(F), (3) with the knowledge that the BESE Board has taken the School Board's request for relief pursuant to La.R.S. 17:158(H) under advisement, and (4) with proof that the BESE Board has instructed the School Board to continue providing free transportation to the Charter School students pending its decision. Accordingly, the issue presented to the trial court was whether, based on the pleadings, the evidence, and the law, the School Board presently has a ministerial duty to provide free transportation to pupils attending the Charter School who live more than one mile from the school, as provided in La.R.S. 17:158(A)(1) and (F). The trial court concluded that because the BESE Board had not authorized the School Board to reduce or eliminate the level of transportation services to the Charter School required by La.R.S. 17:158(A)(1), and because the Charter School met all of the requirements of La.R.S. 17:158(A)(1) and (F), the School Board's mandatory duty under La.R.S. 17:158(A)(1) remained in effect. Accordingly, the trial court issued the writ of mandamus.

We find, as did the trial court, that this is an appropriate case for the remedy of mandamus. The delay involved in obtaining ordinary relief would have deprived the students of transportation to their school, a clear injustice. *See* La.Code Civ.P. art. 3862. When the duty required by law is ministerial, a writ of mandamus may be issued to compel its performance. La.Code Civ.P. art. 3863. The duty required by

13

General School Law La.R.S. 17:158(A)(1) is a ministerial function. The School Board has no discretion in the matter. Only BESE can relieve it of its obligations under the statute, and BESE has not acted. Therefore, we find no error in the trial court's ruling and find no merit in this assignment of error.

### Assignment of Error Number Two

In its second assignment of error, the School Board argues that the trial court erred in not granting its exception of no cause of action. The authority for filing a peremptory exception of no cause of action is found in La.Code Civ.P. art. 927(A)(4).

> The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. The court reviews the petition and accepts well-pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought.

*Pittman v. Beebe*, 95-1342, p. 4 (La.App. 3 Cir. 3/6/96), 670 So.2d 761, 763, *writ denied*, 96-0882 (La. 5/10/96), 672 So.2d 931.

The School Board's principal argument is that because the Charter School and Charter School parents rely on the provisions of La.R.S. 17:158(A)(1) for relief, and because that statute does not apply to charter schools, the petition does not state a cause of action. In making this argument, the School Board suggests that the petition is also deficient in that it does not allege that the School Board had been provided state funds for the cost of transporting the Charter School students. Because we have already concluded that La.R.S. 17:158(A)(1) does apply to charter school students, and because we find no corresponding requirement that the state provide funds to pay the costs of the mandated transportation, we find no merit in this assignment of error.

### Assignment of Error Number Three

14

In its final assignment of error, the School Board asserts that the Charter School and the parents have no right of action. The authority for filing a peremptory exception of no right of action is found in La.Code Civ.P. art. 927(A)(5), and its function is to determine whether the plaintiff or plaintiffs belong to the class of persons to whom the law grants the cause of action asserted in the suit. *Turner v. Busby*, 03-3444 (La. 9/9/04), 883 So.2d 412; *Fritsche v. Vermilion Parish Hosp. Serv. Dist. #2*, 04-1192 (La.App. 3 Cir. 2/2/05), ___ So.2d ___. "The court of appeal reviews exceptions of no right of action de novo." *Id.* at ___.

The beneficiary of the free transportation La.R.S. 17:158 requires school boards to provide is "any student" meeting the eligibility standards of the section. The parents of minor, unemancipated students are the proper persons to sue to enforce their rights. La.Code Civ.P. art. 683. Thus, the parents named as plaintiffs in this litigation have a right of action.

The Charter School also has a right of action. It is a nonprofit corporation under applicable state and federal laws. La.R.S. 17:3991(A)(1)(a). It is authorized to exercise any power and perform any function necessary, requisite, or proper for its management not denied by its charter, the provisions of Chapter 42 of the General School Law, or other laws applicable to a charter school. La.R.S. 17:3991(A)(2). A Type 2 school is funded by the state. La.R.S. 17:3995(A)(1). Its budget requirements are the same as any other political subdivision of the state, and it is required annually to submit a budget to the state superintendent of education. La.R.S. 17:3996(G). As we have previously discussed, it is empowered to negotiate with the local school board in whose jurisdiction it is located for use of facilities and the operation and maintenance thereof, for pupil transportation, and for other support services provided

by the board for other public schools in the system. Clearly, seeing to it that its students are given the free transportation to and from school to which they are entitled is part of the business of a Type 2 charter school. We find no merit in this assignment of error.

## The Answer to the Appeal

In their answer to the School Board's appeal, the Charter School and the parents seek an award of attorney fees for obtaining the writ of mandamus. In support of their request, they direct us to the decisions in *Perron v. Evangeline Parish Police Jury*, 01-0603 (La. 10/16/01), 798 So.2d 67, and *Plaisance v. Davis*, 03-0767 (La.App. 1 Cir. 11/7/03), 868 So.2d 711, *writ denied*, 03-3362 (La. 2/13/04), 867 So.2d 699.

*Perron* involved a suit by a coroner who sought a writ of mandamus to compel the police jury to provide proper funding for his office. The supreme court found that an attorney fee award was a necessary expense incidental to the operation and functioning of his office. *Plaisance* involved a city court judge who sought a writ of mandamus to compel the city to issue his paycheck. The court of appeal affirmed an award of attorney fees, and, in doing so, relied on the decision in *Perron*.

We find these cases distinguishable from the matter now before us. Both of those decisions were based on special statutes requiring the public body to bear the expenses of operation and maintenance of the respective offices. That is to say, both cases involved actions to properly *fund* the office. In the present case, there is no statute that requires a local school board to fund charter schools. Funding is the responsibility of the state. Attorney fees are not recoverable unless expressly provided for by statute or contract. *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*,

16

475 So.2d 756 (La.1985); *Sharbono v. Steve Lang & Son Loggers*, 97-0110 (La. 7/1/97), 696 So.2d 1382. Finding no statutory or contractual authority for the award of attorney fees, we deny the relief requested in the answer to the appeal.

## DISPOSITION

For the reasons set forth herein, we affirm the trial court's judgment in all respects. We assign all costs of this appeal to the Avoyelles Parish School Board. We further deny the Avoyelles Public Charter School's demand for attorney fees and assess all costs of that demand to the Avoyelles Public Charter School and the plaintiff-parents.

**AFFIRMED.**