STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1497

MICHAEL R. GARBER

VERSUS

BADON & RANIER, ET AL.

**********
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2001-5624
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and Glenn B. Gremillion, Judges.

AFFIRMED.

Patrick J. Briney
Briney & Foret
P. O. Box 51367
Lafayette, LA 70505-1367
Telephone: (337) 237-4070
COUNSEL FOR:
 Defendants/Appellees - Kenneth E. Badon, Drew Averill Ranier, and
 Kenneth E. Badon, APLC

Bobby L. Culpepper
Culpepper & Carroll, PLLC
525 East Court Avenue
Jonesboro, LA 71251
Telephone: (318) 259-4184
COUNSEL FOR:
 Plaintiff/Appellant - Michael R. Garber

James B. Doyle
P. O. Box 5241
Lake Charles, LA 70606-5241
Telephone: (337) 474-9989
COUNSEL FOR:
Defendants/Appellees - Kenneth E. Badon, Badon & Ranier, and Kenneth E. Badon, APLC

Merrick J. (Rick) Norman, Jr.
Norman Business Law Center
145 East Street
Lake Charles, LA 70601
Telephone: (337) 436-7787
COUNSEL FOR:
Defendants/Appellees - Kenneth E. Badon and Kenneth E. Badon, APLC

Charles Stovall Weems, III
Gold, Weems, Bruser, el al.
P. O. Box 6118
Alexandria, LA 71307-6118
Telephone: (318) 445-6471
COUNSEL FOR:
Defendants/Appellees - Drew Averill Ranier and Drew A. Ranier, APLC

**THIBODEAUX, Chief Judge.**

This case involves a dispute between attorneys regarding the nature of their fourteen year legal affiliation. The plaintiff/appellant, Michael R. Garber, filed suit in 2002 against the defendants/appellees, Kenneth E. Badon and Drew A. Ranier, against the partnership under which they practiced, and against their separate law corporations. Garber alleged a joint venture and special partnership relationship that entitled him to an accounting and fee participation in the law suits of Badon & Ranier Partnership ("Badon & Ranier" or "Partnership" or "Firm"), particularly in the tobacco litigation, oil and gas royalties, medicaid recovery, and asbestos remediation suits. In addition to the joint venture and special partnership causes of action, Garber also sought recovery under detrimental reliance and unjust enrichment theories of liability.

Badon and Ranier filed numerous exceptions and a motion for summary judgment, resulting in various rulings, and culminating in the dismissal of all of Garber's claims via comprehensive final judgment dated September 24, 2007. Garber appealed. For the reasons set forth below, we affirm the final judgment of the trial court.

I.

## ISSUES

We must decide:

(1)  whether the trial court erred in granting the defendants' exception of no right of action as to the partnership, accounting and fee participation claims;

(2)  whether the trial court erred in dismissing Garber's claims under an unjust enrichment cause of action;

(3)  whether the trial court erred in granting the defendants' motion for summary judgment regarding Garber's joint venture claim; and,

> (4) whether the trial court erred in granting the defendants' motion for summary judgment regarding Garber's detrimental reliance claim.

## II.

## FACTS AND PROCEDURAL HISTORY

Badon and Ranier began working together in 1986 and in April of 1987 organized the Badon & Ranier Partnership. Tax returns show that Kenneth Badon, APLC, and Drew Ranier, APLC, each owned fifty percent (50%) of the Partnership's capital, fifty percent (50%) of its profits, and fifty percent (50%) of its losses. Garber practiced with Badon and Ranier from 1986 until the termination of the Partnership around 2000. Garber's name appeared on the firm's letterhead and in the firm's Martindale Hubbell listing, as did the names of other attorneys associated with the firm at various times. While sharing office space with the Badon & Ranier Partnership, Garber also maintained a separate law practice, his own letterhead, and his own phone line.

The Partnership handled primarily contingency fee cases, but it also handled flat fee cases involving domestic, business, and criminal matters. Garber was paid for the work that he did on the Partnership's cases based upon the invoices that he submitted showing his hourly billing, or he was paid one half of the flat fee charged. Garber sometimes received bonuses from the Partnership. He was paid a $5,000.00 bonus by the Partnership after the tobacco case was successfully resolved. Other Badon and Ranier personnel were also given fixed dollar bonuses. Sometimes, when the partnership declined representation on a particular matter, Garber undertook the representation and collected the entire fee. Garber corresponded with these clients on his own letterhead and on the Partnership's letterhead. Garber did not share the fees from his law practice with Badon and Ranier.

2

The Badon & Ranier firm purchased professional liability insurance through Coregis Insurance Organizations. The Coregis Insurance application designated Garber as "OC," i.e., of counsel. The application further stated that Garber's office was located in Badon & Ranier's office and that he was there a minimum of forty hours per week. It further stated that, "Mr. Garber is paid by the hour on cases he works for Badon & Ranier" and that "his pay scale takes into account the firm pays premiums on Professional Liability Insurance and all of his general overhead expenses." The application also stated that Garber worked eighty hours per month, twenty hours per week, for Badon & Ranier and that he was not a prior partner, officer, director, shareholder or employee.

Garber characterizes his association and work with Badon and Ranier as one of a joint venturer and special partner, alleging that he left one half of his billable hours and one half of the flat fees earned on their cases with the Partnership as his contribution to the firm for office expenses and cost of the cases. He filed suit in 2002 against the Badon & Ranier Partnership, against Badon and Ranier individually, and against their separate professional law corporations. The suit was based upon alleged broken promises or representations made primarily by Drew Ranier that everyone would grow very rich if a successful result was obtained in certain litigation, particularly the tobacco litigation, and the lawyers involved would not have to practice law thereafter. Garber seeks an accounting of the fees earned by the firm during his association with it and seeks to participate with Badon and Ranier for a percentage of those fees, particularly with regard to the tobacco litigation, the royalty litigation, and asbestos cases. In addition to the joint venture and special partnership claims, Garber also asserted claims under unjust enrichment and detrimental reliance.

3

Badon and Ranier characterize Garber as a part-time contract attorney who is not entitled to an accounting and not entitled to participate in the fees earned by the partnership. They filed an exception of no right of action with regard to the partnership, accounting, and fee participation claims, which was granted by the trial court in June of 2005. In March of 2007, the defendants filed an exception of no cause of action with regard to the unjust enrichment claim, which was granted in May of 2007. The defendants' motion for summary judgment regarding the joint venture and detrimental reliance claims was granted on both issues in September 2007. The September judgment was designated by the court as a final judgment incorporating all previous rulings and dismissing all claims against the defendants.

III.

## LAW AND DISCUSSION

### Standards of Review

The determination of whether a plaintiff has a right of action is a question of law which is subject to a *de novo* review. *DeReyna v. Pennzoil Exploration*, 04-97 (La.App. 3 Cir. 8/4/04), 880 So.2d 124, *writ denied,* 04-2261 (La. 11/19/04), 888 So.2d 197. In reviewing a trial court's ruling sustaining an exception of no cause of action, we review the case *de novo* because the exception raises a question of law and because the lower court's decision is based only on the sufficiency of the petition. *Esclovon v. Fondel*, 04-280 (La.App. 3 Cir. 12/22/04), 890 So.2d 770.

Likewise, appellate courts review motions for summary judgments *de novo*, asking the same questions that the trial court asks to determine whether summary judgment is appropriate. *Champagne v. Ward*, 03-3211 (La. 1/19/05), 893 So.2d 773. This inquiry seeks to determine whether any genuine issue of material

fact exists and whether the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966 (C)(1). "A fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of a legal dispute." *Hines v. Garrett,* 04-806, p. 1 (La.6/25/04), 876 So.2d 764, 765.

**Partnership, Accounting and Fee Participation**

Garber's original and first supplemental petitions in this matter claim that he is entitled to a complete accounting of the fees earned on each separate undertaking by the firm, by himself, or by Badon and Ranier in any capacity, on which any work was done in the last ten years, and that he is entitled to a share of the fees recorded. Garber contends that the trial court erred in granting the defendants' exception of no right of action as to the partnership, accounting and fee participation claims. We find no error on the part of the trial court in this regard.

As the trial court explained in its written reasons for granting the exception, the purpose of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit. It assumes that the petition states a valid cause of action and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation. La.Code Civ.P. art. 927; *Moreau v. Avoyelles Parish School Bd.*, 04-1613 (La.App. 3 Cir. 3/9/05), 897 So.2d 875, *writs denied,* 05-910, 05-997 (La. 6/17/05), 904 So.2d 704,705. The defendant claiming the exception must show that the plaintiff does not have an interest in the subject matter of the suit or that he does not have the legal capacity to proceed with the suit. *Goulas v. Denbury Mgmt., Inc.*, 00-935 (La.App. 3 Cir. 12/6/00), 774 So.2d 346.

The applicable Civil Code articles on partnership state in pertinent part as follows:

5

La.Civ.Code art. 2801.  Partnership; definition

A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.

La.Civ.Code art. 2803.  Participation of partners

Each partner participates equally in profits, commercial benefits, and losses of the partnership, unless the partners have agreed otherwise.  The same rule applies to the distribution of assets, but in the absence of contrary agreement, contributions to capital are restored to each partner according to the contribution made.

La.Civ.Code art. 2807.  Decisions affecting the partnership

Unless otherwise agreed, unanimity is required to amend the partnership agreement, to admit new partners, to terminate the partnership, or to permit a partner to withdraw without just cause if the partnership has been constituted for a term.

Decisions affecting the management or operation of a partnership must be made by a majority of the partners, but the parties may stipulate otherwise.

La.Civ.Code art. 2812.  The sharing of a partner's interest with a third person

A partner may share his interest in the partnership with a third person without the consent of his partners, but he cannot make him a member of the partnership.

La.Civ.Code art. 2813.  The right of a partner to obtain information

A partner may inform himself of the business activities of the partnership and may consult its books and records, even if he has been excluded from management. A contrary agreement is null.

He may not exercise his right in a manner that unduly interferes with the operations of the partnership or prevents other partners from exercising their rights in this regard.

La.Civ.Code art. 2837. Partnership in commendam; definition

A partnership in commendam consists of one or more general partners who have the powers, rights, and obligations of partners, and one or more partners in commendam, or limited partners, whose powers, rights, and obligations are defined in this Chapter.

La.Civ.Code art. 2841. Contract form; registry

A contract of partnership in commendam must be in writing and filed for registry with the secretary of state as provided by law. Until the contract is filed for registry, partners in commendam are liable to third parties in the same manner as general partners.

After discussing articles 2801, 2803, and 2813 above, the trial court found that Garber had no right of action for an accounting or for fee participation as a partner in the Badon & Ranier Partnership because the parties had entered a stipulation that Garber was not a partner in the law firm. Therefore, the trial court found that Garber was not a member of the class of individuals to be protected by articles 2803 and 2813 of the Civil Code, which provide for a partner's participation in profits and losses and a partner's right to an accounting. We agree. While we did not locate a written document entitled "Stipulation" in the record, the stipulation was discussed in open court. Further, the record contains the deposition testimony of Michael Garber wherein he admits that he never signed an agreement of any kind with the defendants.

More specifically, a hearing was held on various exceptions on January 7, 2005. The following excerpt is from the transcript of that hearing:

Mr. Doyle:

. . . . Your Honor, I want to also take note of the fact that we did have a status conference with you yesterday in of which Mr. Culpepper participated by phone . . . for which issues we would need to put testimony on the record,

and I don't believe there is going to be any because, as I understand it, our agreement is that Mr. Garber is not claiming that he was a partner in the Badon & Ranier Partnership. Is that right Mr. Culpepper?

Mr. Culpepper:

Plaintiff claims that he was a special partner. Insofar as saying that there was an equal partnership or an equal partner as to divide it three ways or anything like that, then we do not contend that, and we do [?] contend that there were any written Articles of Incorporation or Partnership. We do claim that he was a special partner and it was a joint venture and that representations were made.

The Court:

Is this within one course of litigation or a number of clients, is what I think I had understood yesterday that you believed that it was within only one litigant?

Mr. Culpepper:

The primary thing here is the tobacco litigation in which we contend there was a joint venture there. On a day-to-day basis in handling divorces and handling the normal routine sort of thing, we do not contend that at that point there was an equal partnership.

At the same hearing, Mr. Garber testified that he "was not a member of any partnership for which tax returns were filed. If there was a Badon & Ranier Partnership, it was between Ken Badon, APLC and Drew Ranier, APLC." Garber further testified that he never signed a partnership agreement, employment agreement, or loan for the operation of the firm. He also testified that he received a 1099, not a W-2, for reporting the income that he received from Badon & Ranier. Both Drew Ranier and Kenneth Badon submitted affidavits stating that they were the only two

partners in the firm. Kay Watson, a member of the office personnel at Badon & Ranier, testified by deposition that she believed that Garber was an associate.

Jan Badon Gayle testified by affidavit in May of 2007 that she had been employed with Ken Badon continuously since 1972, that she prepared 1099s and other tax information, prepared, executed, and maintained contingency fee contracts, and disbursed funds for Badon & Ranier. She stated that Garber was never allocated income as a partner, and that payments to him were treated as an expense. She further stated that no contingency fee contract executed by any client during Garber's tenure with Badon & Ranier ever listed Garber as an attorney who was entitled to all or a portion of any contingency fee. Ms. Gayle attested to the fact that Garber billed and received from the firm a total of $730,572.99 during his employment there. She stated that for a while, Garber was on a draw system, wherein he could draw up to $48,000.00 per annum for work he invoiced on an hourly basis; that at least on one occasion, he did not submit bills equal to his draw.

Ms. Gayle further stated that Garber received a 1099 showing his receipt of funds as an independent contractor. She also confirmed that he submitted one bill for 24.5 hours and $1,225.00 in the tobacco litigation. She further attested to the fact that Garber received a year-end, gratuitous bonus of $10,000.00 in 1993, and that he was paid a $5,000.00 bonus by the Partnership and a $5,000.00 bonus by Kenneth E. Badon (APLC) after the tobacco case was resolved. On both occasions, other employees of Badon & Ranier Partnership received bonuses as well.

Accordingly, based upon the foregoing, the trial court did not err in granting the defendants' exception of no right of action regarding Garber's claims for an accounting and for fee participation as a partner in Badon & Ranier under the Civil Code articles governing partnership.

## Unjust Enrichment

Garber asserts that the trial court erred in granting the defendants' exception of no cause of action and dismissing Garber's claims of unjust enrichment. Our Civil Code provides as follows:

> La.Civ.Code art. 2298. Enrichment without cause; compensation
>
> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
>
> The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.
>
> The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.

The elements of an unjust enrichment claim are as follows: There must be (1) an enrichment of the defendant; (2) an impoverishment of the plaintiff; (3) a connection between the enrichment and the resulting impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; ***and***, (5) there must be no other remedy at law available to plaintiff. *Baker v. MacLay Properties Co.*, 94-1529 (La. 1/17/95), 648 So.2d 888.

Garber provides no argument on this issue other than to recite the elements above and to contend that, where the exception was granted on the basis of other available remedies, he now has no other remedies because he has lost on the partnership, joint venture, and detrimental reliance causes of action. We disagree. Under element number five above, it is not the success or failure of other causes of

action, but rather the *existence* of other causes of action, that determine whether unjust enrichment can be applied. "[U]njust enrichment principles are only applicable to fill a gap in the law where no express remedy is provided." *Louisiana Nat'l. Bank of Baton Rouge v. Belello*, 577 So.2d 1099, 1102 (La.App. 1 Cir. 1991); *see also Coastal Envtl. Specialists, Inc. v. Chem-Lig Int'l., Inc.*, 00-1936 (La.App. 1 Cir. 11/9/01), 818 So.2d 12. "An action for unjust enrichment is allowed only when the plaintiff has no other remedy at law. . . . [W]here there is a rule of law directed to the issue, an action must not be allowed to defeat the purpose of said rule." *Carriere v. Bank of Louisiana*, 95-3058, p. 12 (La. 12/13/96), 702 So.2d 648, 657. Further, *Morphy, Makofsky & Masson, Inc. v. Canal Place 2000,* 538 So.2d 569 (La.1989) held that the existence of a claim on an express or implied contract precludes application of the unjust enrichment theory, because the *potential* claim constitutes a practical remedy at law available to the impoverishee.

The courts have stated the function of the exception of no cause of action as follows:

> The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law based on the facts alleged in the pleading. In other words, the exception pleading the objection of no cause of action, tests whether, under the allegations of the petition, the law affords any remedy for the grievance asserted. In ruling on the exception, the court must accept all well-pleaded allegations of fact as true. No evidence may be introduced to support or controvert the objection of no cause of action. La.Code Civ.P. art. 931.

*Teche Fin. Servs., Inc. v. State, Dept., of Pub. Safety, Office of Motor Vehicles*, 06-250, p. 2, 3 (La.App. 3 Cir. 9/27/06), 939 So.2d 650, 652 (citations omitted).

Garber's original 2002 petition pleaded only joint venture and partnership causes of action and sought an accounting of and participation in the fees

11

earned by the firm. His first supplemental petition, filed in December of 2003, added the claim of detrimental reliance, alleging that Garber was induced to stay with the firm as a result of representations that the tobacco litigation would pay richly and enable everyone to retire from practicing law. Garber's second supplemental petition, filed in September of 2006, alleged the five *elements* of unjust enrichment by providing a one sentence paragraph on each element declaring that the defendants were enriched, that Garber was impoverished, that there was a connection between the enrichment and the impoverishment, that there was no justification or cause for the enrichment and impoverishment, and that if his claims of joint venture and detrimental reliance failed, he was entitled to an award on the unjust enrichment claim. However, his two-page supplemental petition alleged very few *facts* to indicate an unjust enrichment remedy. The only *facts* alleged appeared in the following paragraphs:

25.

> While a member of the Badon & Ranier Law Firm, GARBER contributed his effort, knowledge and labor in the preparation and handling of the tobacco litigation for which he was never compensated which unjustly enriched defendants at GARBER'S expense.

32.

> Plaintiff has been impoverished by defendants' retention of funds herein from the tobacco litigation.

33.

> The plaintiff contributed to the receipt by defendants of the funds in question by providing services outlined hereinabove.

34.

> The plaintiff was not compensated by receiving any percentage of the funds in question, or even being compensated on a quantum meruit basis.

With regard to the pleading of facts showing impoverishment and enrichment, these scanty facts fall short of the well-pleaded allegations of fact referenced above in the *Teche Financial* case. Moreover, the pleading fails to allege any fact showing that there was no justification or cause for the enrichment, which is a necessary element in this cause of action. Our Civil Code specifically excludes the remedy in cases in which the enrichment results from a valid juridical act or the law. La.Civ.Code art. 2298. More specifically,

> "Not every unjust enrichment warrants usage of equity. Courts may resort to equity only in cases of unjust enrichment for which there is no justification in law or contract. In other words, an enrichment is justified if it is the result of, or finds its explanation in, the terms of a valid judicial act between the impoverishee and enrichee or between a third party and the enrichee. *Edmonston v. A-Second Mortgage*, [289 So.2d 116 (La. 1974)]."

*Pilgrim Life Ins. Co. of America v. American Bank & Trust Co. of Opelousas*, 542 So.2d 804, 807 (La.App. 3 Cir. 1989). In the present case, the enrichment of the defendants has a cause and is justified as it is comprised of fees earned through great effort by the firm in the tobacco litigation resulting from a valid contract between the Badon & Ranier Partnership and a third party, its client(s). Further, the record indicates that the collective cost of the tobacco litigation to the groups of firms involved was two million dollars. Accordingly, this is not a case of enrichment without cause.

We find no error in the trial court's granting of the defendants' exception of no cause of action with regard to the unjust enrichment cause of action.[1]

---

[1]The trial court again addressed the failure of the unjust enrichment claim at the final hearing that disposed of all claims, the hearing on the motion for summary judgment on joint venture and detrimental reliance, that took place in August of 2007, prior to the comprehensive September 2007 Final Judgment. At the August hearing, the trial court stated that in the event that the unjust enrichment claim were reurged, he found *Moroux v. Toce,* 06-831 (La.App. 3 Cir. 11/2/06), 943 So.2d 1263, *writ denied,* 07-117 (La. 3/16/07), 952 So.2d 698 dispositive of the unjust enrichment claim as well as dispositive of the joint venture and detrimental reliance claims. Under very similar facts in *Moroux,* the trial court found that the evidence failed to substantiate that the plaintiff suffered

## Summary Judgment

Badon and Ranier filed their Motion for Summary Judgment/Partial Summary Judgment asking the court to grant summary judgment dismissing Garber's claims, or in the alternative, to grant partial summary judgment dismissing all claims proper for dismissal. The motion sought to have Garber's claims of joint venture and detrimental reliance dismissed on summary judgment. At the end of the hearing on the motion, the trial court pointed out that a defendant's burden of proof on a motion for summary judgment does not require him to negate all essential elements of the plaintiff's claim, but rather to show the court that there is an absence of factual support for one or more elements essential to the plaintiff's claims, actions, or defenses. The burden then shifts to the plaintiff to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If he is unable to do so, then there is no genuine issue of material fact. La.Code Civ.P. art. 966 (C)(2).

The trial court then granted summary judgment in favor of the defendants on both issues, dismissing Garber's claims of joint venture and detrimental reliance. The court cited *Moroux v. Toce,* 06-831 (La.App. 3 Cir. 11/2/06), 943 So.2d 1263, *writ denied,* 07-117 (La. 3/16/07), 952 So.2d 698, as an analogous case bearing significant weight as to both issues in the summary judgment motion and also as to the unjust enrichment claim, which he had previously dismissed pursuant to an exception of no cause of action.

---

an impoverishment.

**Joint Venture**

Garber contends that the trial court erred in granting summary judgment on the joint venture claim. A joint venture results from two or more persons undertaking to combine their efforts, knowledge, property, or labor to engage in and carry out a single business venture for joint profit, where profits and losses are shared, with each party having some right of control over the business. *Moroux v. Toce,* 943 So.2d 1263; *Cajun Elec. Power Coop., Inc. v. McNamara,* 452 So.2d 212 (La.App. 1 Cir.), *writ denied,* 458 So.2d 123 (La.1984).

In *Moroux*, the defendant was retained to represent over one hundred claimants after crop dusting chemicals drifted onto the grounds of a nearby school in early 1995. In the fall of 1996, the defendant associated the plaintiff primarily to work on the chemical drift case. Both parties agreed that the terms of the plaintiff's compensation were pursuant to an oral contract. Approximately two and one half years after their association, the defendant told the plaintiff that he was forming a partnership with another attorney and that the plaintiff's draw would be decreased under the new partnership. The plaintiff severed his relationship with the defendant but continued to assist with the chemical drift case which was mediated and settled a week later. The plaintiff filed an intervention in the suit seeking a portion of the legal fees. The intervention was dismissed, and the plaintiff sued the defendant under theories of breach of contract, joint venture, detrimental reliance, and unjust enrichment.

In *Moroux*, partial summary judgments were granted on joint venture, detrimental reliance, and unjust enrichment. Following the trial of the breach of contract claim, the trial court found that an oral contract did exist, but the plaintiff failed to prove that the contract was for a portion of the fees. Instead the court

15

awarded the plaintiff $5,000.00 for the work he performed on the case after severing

his employment with the defendant.  The plaintiff appealed.  As to the joint venture

issue, this court stated as follows:

> [J]oint ventures are generally treated by our law as a species of partnership, and governed by the law of partnerships.  [*Cajun Electric Power Cooperative, Inc.*, 452 So.2d 212, 214].  For example, there is a fiduciary duty between members of a joint venture similar to that which exists between partners in a partnership.  *Sutton v. Fleming*, 602 So.2d 228, 230 (La.App. 3rd Cir. 1992).
>
> Louisiana Civil Code article 2801 defines a partnership as follows:
>
> A partnership is a juridical person, distinct from its partners, created by a contract between two or more persons to combine their efforts or resources in determined proportions and to collaborate at mutual risk for their common profit or commercial benefit.
>
> The requisite criteria for the existence of a joint venture (and a partnership) have been defined as follows:
>
> (1) A contract between two or more persons;
>
> (2) A juridical entity or person is established;
>
> (3) Contribution by all parties of either efforts or resources;
>
> (4) The contribution must be in determinate proportions;
>
> (5) There must be joint effort;
>
> (6) There must be a mutual risk vis-à-vis losses;
>
> (7) There must be a sharing of profits.
>
> *Cajun Electric*, 452 So.2d at 215.

*Moroux,* 943 So.2d at 1271.

After reviewing the law and evidence introduced in *Moroux,* a panel of

this court affirmed summary judgment on the joint venture issue, articulating as

follows:

Moroux testified via deposition that he incurred no risks while working on the chemical drift case for Toce, as Toce financed the case, paid all office overhead, provided Moroux with secretarial staff, paid his legal malpractice insurance, provided his computer, phone, and other equipment, and paid all research expenses. Moroux further admitted that the contingency fee contract was between Toce and the plaintiffs and, although he felt that he exercised some measure of control over the case, he agreed that the ultimate authority rested with Toce. Accordingly, we find that Moroux will be unable to prove that he and Toce shared a mutual risk in the case vis-à-vis losses. Thus, we affirm the trial court's grant of a partial summary judgment on this issue.

*Id.*

Similarly, in the present case, Garber testified that he never signed a loan or wrote a check to help finance the expensive tobacco litigation or other contingency fee cases. Rather, he billed his time hourly and was paid even if the contingency case he worked on was lost and the partnership lost money on the case. Particularly in the tobacco litigation, Garber submitted one invoice on September 9, 1994, prior to the filing of the case, for twenty-four and a half hours of work on the case at $50.00 an hour for a total payment of $1,225.00. Garber testified that he continued to answer questions and brainstorm with the other attorneys on an occasional basis, but there is no further evidence of hours spent, and no other hours billed.

Kay Watson, purportedly the only non-lawyer, staff person to work on the tobacco litigation in the beginning, testified by deposition that Frank Elliot came into the firm around 1995, and that she and Frank finally filed the tobacco suit in 1996. She further testified that Tom Gayle was hired in 1996, stating as follows:

> A.    I think originally, Mike [Garber] was going to be the one that was actually going to do what Tom Gayle ended up doing, as far as I remember it, that he was going to be the person to kind of come in and kind of, you know, put everything together and write whatever briefs, write whatever, you know, motions or whatever came about as a result. Mike was

17

> involved in a lot of the early conversations about, you know, what the plan was and how to get it filed and what we were going to do and the direct-action statute and all that stuff originally.

Q.    But then Mr. Gayle came in, and he took over the Tobacco Litigation Group?

A.    In '96.

Hence, the record indicates a serious shift in responsibilities for the tobacco litigation after Garber's 1994 invoice on that case. The record reveals that the case did not settle for another six years. Also similar to the facts in *Moroux,* Badon and Ranier paid Garber's malpractice insurance and paid for the support staff and the office expenses and financed the expensive contingency fee cases. Unlike the facts in *Moroux*, Garber argues that he contributed to the expenses and overhead of the firm because the firm generated invoices to the clients for $100.00 per hour for Garber's work on a case, and Garber was paid $50.00 an hour, per agreement, so that he contributed one half of everything he billed to the firm, in addition to providing books, furniture and even office space at various times.

However, unlike the plaintiff in *Moroux,* Garber maintained an entirely separate law practice that paid him approximately $35,000.00 per year in addition to the $48,000.00 to $52,000.00 per year that he made with Badon and Ranier. Moreover, there was also a practice of Garber's making draws against future billing, such that one year he had to repay the firm $12,000.00 because his draws exceeded his billing. It is also important to note that Garber did not share with Badon and Ranier the fees that he collected on the cases that he handled through his separate law practice. The profits and risks clearly were not shared with the partnership; indeed, the risks were nonexistent.

## Detrimental Reliance

Garber asserts that the trial court erred in granting the defendants' motion for summary judgment on his detrimental reliance claim. Again the court relied on the *Moroux* case, where a panel of this court affirmed a summary judgment on the issue of detrimental reliance, stating as follows:

> The doctrine of detrimental reliance is found in La.Civ.Code art. 1967, which provides:
>
> > Cause is the reason why a party obligates himself.
> >
> > A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable.
>
> Detrimental reliance, also known as equitable estoppel, prevents a party from reneging or taking a position contrary to his prior acts, admissions, representations, or silence. To recover pursuant to detrimental reliance, a plaintiff must prove (1) a prior representation by conduct or word, (2) a justifiable reliance, and (3) a detrimental change in one's position based on that reliance. As the supreme court stated:
>
> > Rather, the basis of detrimental reliance is "the idea that a person should not harm another person by making promises that he will not keep." Thus, the focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment.

> Moreover, the doctrine of detrimental reliance is not favored by the law and all claims must be examined carefully and strictly.

*Moroux,* 943 So.2d at 1272 (citations omitted).

In *Moroux*, the plaintiff indicated that he spent sixty to seventy percent of his time on the chemical drift case as a result of the defendant's promise. Moroux stated that he relied to his detriment in the following ways: he would not have spent the majority of his time on the case; he would have focused his attention on other cases in order to increase his earnings; he would have pursued other work; he would have sought out other job opportunities; and, he could have otherwise generated approximately $250,000 to $300,000 in earnings per year. However, under questioning, Moroux admitted that no other firm had guaranteed him the amount of money he was making with Toce. In *Moroux*, we found a lack of evidence in depositions and affidavits to show that *Moroux* could carry his burden at trial of proving that he detrimentally changed his position based on his reliance that he would share in the chemical drift case.

Similarly, in the present case, Garber testified in his deposition that if he had not relied to his detriment, he would have spent his time building his own law practice and legal reputation instead of building the practice of Badon and Ranier. The trial court in this case, as in *Moroux*, found the detrimental change of position lacking, and we agree with that analysis. In fact, in this case, the record reveals that Garber was offered opportunities to change his position, but he declined to do so. More specifically, Garber admitted that he was offered to share contingency fees on certain cases more than once by Badon but declined because he did not want to sign loans. He characterized these offers as less than equal and therefore unfair because he was not offered a full one third on all business. We find this argument

unpersuasive where the law provides us many options in fashioning partnerships to suit our needs.

Garber stated in his deposition that as a result of promised riches, he had improvidently invested in a Texas security service business that caused him to lose $200,000.00 and that he probably would not have made the investment had there been no promises. However, under Article 1967, we fail to see how Ranier, the main source of the representations, could or should have known that his general statements of a lucrative payoff, not specific promises of a particular amount, would induce Garber to rely on such statements to the tune of what was actually a $400,000.00 investment, which Garber managed through damage control to bring down to a loss of only half of the amount expended. Where no specific bonus amounts were ever discussed, let alone reduced to writing, Garber may have suffered a detriment, but it was not the result of a *reasonable* reliance for which there is recovery under Article 1967. Accordingly, we affirm the trial court's dismissal of the claim of detrimental reliance on the defendants' summary judgment motion.

Garber includes at the end of his brief a plea for specific performance, citing *Morphy*, 538 So.2d 569, for the proposition that an agreement does not fail simply because the amount of remuneration is not agreed upon, and that the amount for reasonable services is up to the trier of fact to determine. The trial court attempted at various times during the last hearing to elicit argument on this issue, stating that it was part of Garber's argument in his opposition to the motion for summary judgment. The transcript contains the following colloquy:

The Court:

Tell me about the specific performance claim
that you are alleging or what was the basis of
that.

21

Mr. Culpepper:

> Well, the basis for the specific performance claim would be that he performed. He did work for which he was not compensated and, if there is not a joint venture involved in this, which we think that there is, then he should be compensated for the work he did instead of if he's not going to share in the joint venture. If there was some sort of other agreement, well then he should be compensated, and admittedly he did not turn in statements for all of this. A lot of things he did he did not turn in statements and did not get paid anything for.

Mr. Culpepper did not even articulate what specific performance was sought from the defendants except to state that Garber should be compensated, without the benefit of statements, *if* there was "some sort of other agreement." In his opposition to the defendants' motion for summary judgment, Garber cited *Morphy*, as in his brief, and argued that he did more work on the tobacco case after the 1994 invoice, and after Tom Gayle took over the litigation in 1996. However, the only evidence in the record to substantiate that argument is Garber's affidavit. While the paralegal, Kay Watson, testified by deposition that she was present for some of the representations that there would be a large payoff for everyone in the firm to share if the tobacco litigation was successful, she indicated that this was in the early nineties. Ms. Watson did not discuss any work that Garber might have done on the case after it was filed and after Tom Gayle was hired.

At the final hearing on the motion for summary judgment in August 2007, the trial court referenced the fact that there had been "some argument" on specific performance but that it did nothing to strengthen Garber's case. The trial court did not reference it as a cause of action and thought the argument, as presented, fell under the unjust enrichment cause of action. We note that, while Garber alleged

22

breach of contract in his original petition in 2002, he apparently abandoned the cause of action as his brief and insufficient arguments only addressed specific performance under a heading called "Specific Performance," and he provided no evidence on the issue other than that discussed above. Garber did not argue the elements of a breach of contract cause of action. Accordingly, the trial court dismissed the specific performance issue at the hearing along with the unjust enrichment claim and did not address it in its final judgment.

When a judgment is silent as to part of the relief requested, the judgment is deemed to have denied that relief. *Duhon v. Lafayette Consol. Gov't.*, 05-657 (La.App. 3 Cir. 12/30/05), 918 So.2d 1114.

IV.

**CONCLUSION**

Based upon the foregoing, the trial court's dismissal of all of Garber's claims against Badon and Ranier, including partnership, joint venture, detrimental reliance, and unjust enrichment is hereby affirmed. The cost of this appeal is to be borne by the plaintiff-appellant, Michael R. Garber.

**AFFIRMED.**