PITTMAN, Judge.
V.W. (“the mother”) appeals from a judgment of the Coffee Juvenile Court determining G.L.W. (“the child”) to be a dependent child and awarding custody of the child to G.W. (“the father”). Because the juvenile court’s judgment is not supported by the facts and the governing law, we reverse and remand.
The record reveals that the child was born in December 1998. Although there is no indication in the record that the parties have ever married or that the child’s paternity has ever been finally adjudicated, neither party disputes that the father is the child’s biological father. Before the instant action, the child had since her birth been in the mother’s physical custody with the exception of a brief period during the child’s infancy. Further, the father has, at various times, been judicially obligated to pay child support to the mother for the benefit of the child.
*415 On January 6, 2006, the father, proceeding through counsel, filed in the juvenile court a verified document captioned “In the Matter of G.L.W.” and styled “Petition for Custody.” In that document, the father averred that the mother had left the child “with relatives or others most of the time,” that the mother “d[id] not have a stable life,” that the mother had “associate[d] with known drug users and manufacturers” so as to endanger the child, that illicit drugs were being produced at the mother’s residence, that police officers had “raided” the mother’s residence while the child was present, that drug residue was found at the mother’s home, and that it would be “in the best interest of the minor child to be placed in the care, custody and control of [the father] pending a final hearing ... and thereafter.” The “Petition for Custody” did not allege that the child was dependent under Ala.Code 1975, § 12-15-1 et seq. The record also contains an unsigned “Dependent Petition” form, filed on January 25, 2006, in which three boxes on a checklist have been marked so as to indicate contentions that the child was dependent: (1) because her “custody [was] the subject of controversy”; (2) because she was “in a condition or surroundings or ... under improper or insufficient guardianship or control as to endanger [her] morals, health, or general welfare”; and (3) because she was “without proper parental care and control necessary for [her] well-being because of the faults or habits of [her] parents, guardian, or other custodian or their neglect or refusal, when able to do so, to provide them.”
In March 2006, in response to the father’s filings, the juvenile court, after an ex parte hearing at which only the father appeared, entered an order determining that “emergency and/or exigent circumstances exist[ed] to warrant” awarding custody of the child to the father pending a final hearing and suspending the father’s child-support obligations. The mother then filed a motion to set aside that order, alleging that the father’s motivation for seeking custody of the child stemmed not from any emergency situation, but rather from the mother’s intent to seek enforcement of the father’s duty to pay child support. Although the juvenile court denied that motion after a hearing, that court ordered home studies to be undertaken as to the mother and the father by representatives of the local department of human resources. After those studies had been undertaken, the mother, through new counsel, filed a motion to dismiss the action and to restore her custody of the child; no action was taken on that motion.
On November 9, 2006, during a colloquy at the beginning of trial, counsel for the father stated that she had initially filed the “Petition for Custody” but that she had later been informed by the office of the juvenile judge that a dependency petition should be filed. The juvenile judge, in response to counsel’s remarks, stated that the use in the “Petition for Custody” of the nonadversarial caption “In the matter of’ was indicative of a dependency matter rather than a custody dispute and that its use would have triggered the judge’s personnel to obtain from the father’s counsel completed forms typical of dependency cases. The juvenile judge then stated:
“I’m treating it as a dependency petition because it’s styled ‘in the matter of,’ which is a juvenile court petition. And the juvenile court has original exclusive jurisdiction over actions concerning dependency, so we’ll treat it as a dependency petition.”
After receiving testimony from the child’s schoolteachers, the father, the mother, and the mother’s former husband, the juvenile court entered a judgment on June 21, 2007. In its judgment, which was entered on a preprinted form, the juvenile court *416 made notations indicating that it had found the child dependent pursuant to § 12-15-1(10), Ala.Code 1975, and that custody of the child was awarded to the father. The mother timely appealed from the juvenile court’s judgment, and this court has appellate jurisdiction based upon the adequacy for review of the record, as certified by the juvenile court. See Rule 28(A)(1)(a), Ala. R. Juv. P.
In her brief on appeal, the mother contends, among other things, that the juvenile court’s judgment of dependency is contrary to Ala.Code 1975, § 12-15-1(10), which defines a “dependent child” under Alabama law.[1] In response, the father contends that the evidence supports the propositions that the child is “in a condition or surroundings or is under improper or insufficient guardianship or control as to endanger the morals, health, or general welfare of the child” and/or “has no proper parental care of guardianship” and, thus, falls within the definitions of a dependent child in subsections f. and g. of § 12-15-1(10).
At trial, after being called as a witness by his attorney, the father testified that, although he did not believe that the mother was herself a current danger to the child, he had “heard things” from the child’s reports that “ma[d]e [him] concerned” about some of the people with whom the mother had allegedly associated. When the father’s counsel attempted to elicit testimony from the father regarding the child’s reports, the mother objected, asserting that such testimony would be hearsay; the juvenile court sustained that objection. The father then opined, without elaboration, that he was concerned because the mother had been to nightclubs to consume alcoholic beverages and “because of the things that I know [the mother] was doing” and “the people that I know that she has had around her.” The father also stated that, in his opinion, a parent should not seek higher education at the expense of a current job. On cross-examination, the father admitted that the mother had visited nightclubs and had consumed alcoholic beverages for several years preceding the filing of the “Petition for Custody,” including during the father’s relationship with the mother seven years before, and he could not identify particular dangerous male individuals with whom the mother had been associating.
According to his testimony on cross-examination, the particular “immediate harm” upon which the father had based his January 2006 filing stemmed from his observations that K.W., a male acquaintance of the mother’s, had appeared to be cohabiting with the mother and the child; the father also testified to having been informed that police officers had conducted a search for illicit drugs at the mother’s home on one occasion in August 2005, during the period of that alleged cohabitation. The mother admitted that a police search at the residence had indeed taken place, but she testified that police officers had undertaken that search in order to find a person other than K.W.; moreover, it is undisputed that the search did not reveal the presence of illegal drugs at the residence. As to K.W., the mother admitted *417 that she had had a relationship with him from mid-2004 through November 2005, without having had knowledge of his having a criminal record of drug possession,[2] but testified that she had initiated no contact with K.W. since pendente lite custody of the child had been transferred to the father in March 2006. The mother also testified that she did not plan to allow the child or the child’s two half siblings (who remain in the mother’s custody) to have any further contact with K.W.
As Judge Murdock correctly noted in his opinion concurring in the result in K.B. v. Cleburne County Department of Human Resources, 897 So.2d 379, 389 (Ala.Civ.App.2004), “in order to make a disposition of a child in the context of a dependency proceeding, the child must in fact be dependent at the time of that disposition.” In this case, however, the alleged “emergency” basis for the father’s custody petition, to the extent that it was borne out by corroborating evidence rather than hearsay or conjecture, stemmed almost exclusively from circumstances existing during the mother’s now-terminated relationship with K.W. In contrast, at the time of trial, the mother had been a part-time student at Troy University for several semesters and was the sole parent caring for the child’s two older half siblings, both of whom were making “A” and “B” grades in school. Although there was evidence that school records relating to the child noted that she had been tardy without an excuse on as many as 13 occasions during her first-grade year while in the mother’s custody, many of the tardy notations also show that the child arrived only minutes late for the start of school, and the child earned excellent grades during that period. Moreover, there is no evidence in the record tending to show that the mother was in any way unable to provide for or to care for the two children remaining in her home after the father assumed custody of the child in March 2006; indeed, the mother’s former husband testified that the mother had done a “good job” in rearing her children.
It is well settled that a trial court’s custody determination entered upon oral testimony is accorded a presumption of correctness on appeal and is not to be reversed “unless the evidence so fails to support the determination that it is plainly and palpably wrong.” Phillips v. Phillips, 622 So.2d 410, 412 (Ala.Civ.App.1993). However, a juvenile court’s determination of dependency under Alabama law must be supported by “clear and convincing” evidence. See Ala.Code 1975, § 12 — 15—65(f); see also J.S.M. v. P.J., 902 So.2d 89, 95 (Ala.Civ.App.2004). Under the circumstances of this case, after a review of the evidence in the record, we are constrained to agree with the mother that the child’s dependency was not demonstrated under Alabama law so as to support the juvenile court’s adjudication and disposition of the child. The record lacks evidence tending to show, as the father contends, that under the mother’s care the child’s “morals, health, or general welfare” would be in any current danger or that the mother has failed to provide proper care or guardianship (such as by actively abusing the child, neglecting the child, or leaving the child without adult supervision). Thus, the judgment of the juvenile court is due to be, and is, reversed.
In light of the remarks made by counsel for the father and by the juvenile-court judge at the start of trial, it would appear *418 that the cause would (properly) have proceeded as a custody action between competing fit parents were it not for the juvenile court’s insistence that the case be litigated as a dependency action because of the use of a nonadversarial caption in the father’s initial “Petition for Custody.” Compare S.G. v. P.C., 853 So.2d 246, 248 (Ala.Civ.App.2002) (“While the ... court in this case did make ... a finding [of dependency], a careful review of the entire record leads us to conclude that this was not a dependency action, but was instead a custody dispute between the parties.”). Because this case, like S.G., is more in the nature of a custody dispute between two out-of-wedlock parents than a true dependency proceeding, we remand the cause for the juvenile court “to conduct further proceedings consistent with this opinion and to apply an appropriate custody standard to the facts of this case.” J.A.P. v. M.M., 872 So.2d 861, 867 (Ala.Civ.App.2003); see also S.T.S. v. C.T., 746 So.2d 1017, 1021 (Ala.Civ.App.1999). Our opinion, however, should not be read as “dictating to the [juvenile] court the outcome that should be reached on remand.” S.T.S., 746 So.2d at 1021.
REVERSED AND REMANDED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. The father argues in his brief that the mother's brief does not comply with Rule 28(a)(10), Ala. R.App. P., because the mother cites no cases in support of her position. However, Rule 28(a)(10) requires that a party's brief include an argument “containing ... citations to the cases, statutes, other authorities, and parts of the record relied on” (emphasis added). We deem the mother's reliance upon the primary authority — the pertinent dependency statute cited by the juvenile court in its form judgment — sufficient compliance with Rule 28(a)(10) so as to adequately present for review the propriety of that court's judgment of dependency.

. Although the mother admitted at trial that one of her children had testified at an earlier hearing to having found drugs in one of the mattresses at the mother’s home, there is no indication in the record that the mother had placed the drugs there, or that the drugs were found after the mother and K.W. had terminated their relationship.