Rel: March 14, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

_____

### CL-2024-0942

_____

### Ex parte P.G.

### PETITION FOR WRIT OF MANDAMUS

### (In re: Matter of J.G.)

### (Elmore Juvenile Court: JU-24-224.01)

_____

### CL-2024-0943

_____

### Ex parte P.G.

### PETITION FOR WRIT OF MANDAMUS

### (In re: Matter of H.S.)

### (Elmore Juvenile Court: JU-24-225.01)

CL-2024-0942 and CL-2024-0943

EDWARDS, Judge.

On October 28, 2024, the Elmore County Department of Human Resources ("DHR") filed in the Elmore Juvenile Court ("the juvenile court") dependency petitions regarding J.G. and H.S. ("the children"), the children of P.G. ("the mother"); each petition was accompanied with what DHR entitled as a "Petition for Protective Supervision."[1]  In the dependency petitions, DHR alleged that, in August 2024, the mother had been arrested during a traffic stop that had been initiated because of a report that had been made to DHR indicating that the mother had been drinking excessively and then left a local establishment with a child in her automobile.  The petitions also alleged that, as a result of that traffic stop, the mother had been charged with reckless endangerment of a child, disorderly conduct, and possession of marijuana.  DHR alleged that it had become involved with the mother and had instituted a safety plan on August 15, 2024, under which the children were placed in the home of G.G. ("the maternal grandmother").  The safety plan, to which the mother

---

[1]The dependency petition regarding J.G. was assigned case number JU-24-224.01, and the dependency petition regarding H.S. was assigned case number JU-24-225.01.

2

had agreed, required that the mother's visitation with the children be supervised by the maternal grandmother.[2]

The materials before us in support of these mandamus petitions do not reflect that DHR requested a pickup order for the children or requested that the juvenile court hold a 72-hour hearing. See Ala. Code 1975, § 12-15-308. We presume that DHR did not require a pickup order or a 72-hour hearing in these dependency actions because DHR was operating under the agreed-upon safety plan and apparently was seeking protective supervision of the children as opposed to legal custody of the children. See Ala. Code 1975, § 12-15-301(11) (defining "protective supervision" as "[a] legal status created by order of the juvenile court following an adjudication of dependency whereby a child is placed with a parent or other person subject to supervision by the Department of Human Resources"); Ala. Code 1975, § 12-15-314(a)(2) (providing that, once a child had been declared to be a dependent child, the juvenile court may "[p]lace the child under protective supervision under the

_____

[2]The safety plan reflects that it was revised on October 15, 2024, and again on November 8, 2024, to modify the days and times for the mother's visitation. The specific modifications are not pertinent to the resolution of these mandamus petitions.

3

Department of Human Resources"). DHR does not specify in either dependency petition whether DHR desires that the child be placed with the mother or with another specified person; instead, the petitions request only that DHR be awarded "protective supervision" so that the mother could complete offered services to alleviate risk to the children.

DHR and the mother agree that the juvenile court set the petitions for an adjudicatory trial to be held on November 13, 2024. However, on the date of the trial, apparently at some point after the commencement of testimony, the juvenile court entered the following order in both cases:

> "This case came before this court on this the 13th day of November 2024. During testimony, it became clear that the parties had a material miscommunication about the parties' respective positions. Accordingly, the Court declares a mistrial and resets this matter [for] February 12, 2025, at 9:00 a.m.[3]
>
> "The current safety plan remains in place pending further order of the court."

The mother filed in the juvenile court in both cases a motion to reconsider the juvenile court's November 13, 2024, order and a brief in

---

[3]On the joint motion of the parties, the February 12, 2025, trial was rescheduled to May 14, 2025.

support of that motion.[4]  In her motion, the mother also requested that the juvenile court enter an order dismissing the dependency petitions, explaining that, in her opinion, the allegations in the dependency petitions were insufficient to invoke the jurisdiction of the juvenile court. On November 19, 2024, the juvenile court denied the mother's motion to reconsider with the following order:

> "This matter is before the Court on the mother's MOTION TO ALTER OR AMEND. During the hearing of November 13, 2024, the mother objected to questions put to her related to an arrest for DUI[5] because the charges are pending, presumably on Fifth Amendment grounds. Balancing the mother's right against self-incrimination and the State's interest in protecting children from substantial risk of harm, the Court had no alternative but to declare a mistrial and reschedule the hearing, leaving in place the safety plan previously established. See[,] generally, Ex parte M.J.W., 62 So. 3d 531, 535 (Ala. Civ. App. 2010) (Court should balance a parent's right against self-incrimination and the interest of the State in protecting children and upholding

---

[4]The mother labeled that motion as a motion to alter, amend, or vacate, pursuant to Rule 1(B), Ala. R. Juv. P., and Rule 59, Ala. R. Civ. P.; however, because the juvenile court's order was an interlocutory order, and because a postjudgment motion may be directed toward only a final judgment, the motion was instead a motion to reconsider an interlocutory order.  See Ex parte Troutman Sanders, LLP, 866 So. 2d 547, 549-50 (Ala. 2003).

[5]Nothing in the materials before this court suggests that the mother was arrested in August 2024 for driving under the influence, and, in fact, the mother states in her mandamus petitions that she was not charged with driving under the influence.

> delay of dependency trial.). Accordingly, the Motion to Alter
> or Amend is DENIED."

(Capitalization in original.) On December 2, 2024, the mother filed these petitions for the writ of mandamus.

We must first consider whether the mother's mandamus petitions were timely filed. Insofar as the mother seeks review of the denial of her motion to dismiss the dependency actions, which relief she had requested within her motion to reconsider the November 13, 2024, order, she is challenging the November 19, 2024, order, and her petitions are timely, having been filed within 14 days of the entry of that order. See Rule 21(a)(3), Ala. R. App. P. (providing that "[t]he presumptively reasonable time for filing a petition [for the writ of mandamus] shall be the same as the time for taking an appeal"), and Ex parte A.E.Q., 102 So. 3d 388, 391 (Ala. Civ. App. 2012) (explaining that the presumptively reasonable time for filing a petition for the writ of mandamus seeking review of a juvenile court's order is 14 days); see also Rule 4(a)(1)(E), Ala. R. App. P. (proscribing that the time for taking an appeal from a final judgment of a juvenile court is 14 days after the entry of that judgment), and Rule 28(D), Ala. R. Juv. P. (same). In addition, the mother also seeks review of the November 13, 2024, order, which stated that the safety plan

6

initiated by DHR would "remain[] in place pending further order of the court." She had 14 days to file a petition for the writ of mandamus directed to the November 13, 2024, order. Because the November 13, 2024, order was an interlocutory order, the filing of the motion to reconsider by the mother did not toll the time for the filing of a writ of mandamus, and her mandamus petitions, insofar as they challenge the November 13, 2024, order, are untimely. See Ex parte C.J.A., 12 So. 3d 1214, 1216 (Ala. Civ. App. 2009) (quoting Ex parte Onyx Waste Servs. of Florida, 979 So. 2d 833, 834 (Ala. Civ. App. 2007)) (explaining that, "'unlike a postjudgment motion following a final judgment, a motion to reconsider an interlocutory order does not toll the presumptively reasonable time period that a party has to petition an appellate court for a writ of mandamus'").

However, the main thrust of the mother's arguments in her mandamus petitions directed to the November 13, 2024, order is that the juvenile court lacked jurisdiction to enter the order insofar as it required continuation of the safety plan because it had not found the children to be dependent. She further contends that the November 13, 2024, order, in effect, orders that the mother's visitation with the children be

7

supervised without evidence supporting the necessity for such a restriction on the mother's right to visitation. Thus, the mother is also challenging the November 13, 2024, order as being void for a lack of due process. As we explained in Ex parte M.F.B., 228 So. 3d 460, 462 (Ala. Civ. App. 2017), a challenge to the entry of an interlocutory order on the basis that it was entered without notice and the opportunity to be heard "do[es] in fact go to the power of the juvenile court to enter [an interlocutory] order[]" and, therefore, "consideration of the merits [of the mandamus petition], notwithstanding … noncompliance with Rule 21(a)(3), Ala. R. App. P.," is permitted. See M.G.D. v. L.B., 164 So. 3d 606, 608, 611-12 (Ala. Civ. App. 2014) (declaring a juvenile court's order restricting removal of minor children from Alabama without permission void on the basis that the entry of the order without notice and an opportunity to be heard violated procedural due-process principles); see also E.C.B. v. Madison Cnty. Dep't of Hum. Res., 294 So. 3d 778, 780 (Ala. Civ. App. 2019); A.D.J.D. v. Cullman Cnty. Dep't of Hum. Res., 181 So. 3d 359, 361 (Ala. Civ. App. 2015); L.W. v. Cullman Cnty. Dep't of Hum. Res., 181 So. 3d 1070, 1071 (Ala. Civ. App. 2015). Accordingly, we will

consider the merits of the mother's arguments relating to the November 13, 2024, order.

We first address the mother's argument that DHR's dependency petitions are "facially deficient" because, she says, they do not contain sufficient allegations to establish the dependency of the children. Although not styled as such and although included within the mother's motion to reconsider the November 13, 2024, order, the mother's motion to dismiss appears to argue that the dependency petitions fail to state a claim upon which relief could be granted. See Rule 12(b)(6), Ala. R. Civ. P. Such a motion tests the sufficiency of a complaint or petition. See Driskill v. Culliver, 797 So. 2d 495, 497 (Ala. Civ. App. 2001) (quoting Public Rels. Couns., Inc. v. City of Mobile, 565 So. 2d 78, 81 (Ala. 1990)) ("A Rule 12(b)(6) motion serves to 'test[] the sufficiency of the pleadings to determine if the plaintiff has stated a claim upon which relief can be granted.'").

Although the mother contends that the dependency petitions do not contain sufficient allegations, even if proven, to establish the children's

9

dependency, we disagree.[6] The allegations in the petitions are that the mother was driving an automobile that reeked of marijuana odor, that at least two marijuana cigarettes were discovered in the automobile, that several open containers of alcohol were discovered in the automobile, and that she behaved in a disorderly manner when pulled over for a traffic stop. In addition, the petitions alleged that the mother had been arrested and charged with possession of marijuana; reckless endangerment of a child, see Ala. Code 1975, § 13A-6-24(a) (defining "reckless endangerment" as "recklessly engag[ing] in conduct which creates a substantial risk of serious physical injury to another person"); and disorderly conduct, see Ala. Code 1975, § 13A-11-7(a) (describing "disorderly conduct" as certain conduct, including fighting or using obscene or offensive language, "if [done] with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof"). Moreover, DHR alleged that the mother had tested positive for the use of marijuana. The mother's described conduct was such that she

---

[6]In her mandamus petitions, the mother spends considerable time discussing what DHR did not prove. However, no trial has been conducted. The mother's motion to dismiss the petitions came after the commencement of the originally scheduled trial and after the juvenile court had terminated the trial and had imposed a stay.

10

had exposed the child with her in the automobile to potential dangers, including the possibility of injury and potential exposure to illegal or unsafe substances; in addition, the mother tested positive for the use of marijuana, raising an issue regarding whether her use of that drug rendered her unable or unwilling to discharge her duties as a parent.[7] Such allegations relating to the mother's conduct, if proven, and if still continuing at the time of the trial, could form a sufficient basis for a finding of dependency. See Ala. Code 1975, § 12-15-102(8)a. (defining the term "dependent child" to include, among other things, a child "[w]hose parent … subjects the child or any other child in the household to abuse, as defined in [Ala. Code 1975, §] 12-15-301," "[w]ho is without a parent … willing and able to provide for the care, support, or education of the child," and "[w]hose parent … is unable or unwilling to discharge his or her responsibilities to and for the child"); W.T.H. v. M.M.M., 915 So. 2d 64, 72 (Ala. Civ. App. 2005) (concluding that allegations that implicate portions of the statute defining the term "dependent child" are sufficient

---

[7]The mother has attacked the adequacy of the allegations in the dependency petitions. Contrary to the mother's argument in her mandamus petitions, DHR's petitions were not required to contain evidentiary proof of the children's dependency.

11

to invoke the juvenile court's dependency jurisdiction).  Thus, we reject the mother's argument that DHR's petitions lacked sufficient allegations to invoke the dependency jurisdiction of the juvenile court.

We next consider the mother's argument that the juvenile court lacked jurisdiction to enter its November 13, 2024, order because the juvenile court did not find the children to be dependent.  The mother relies on the caselaw providing that,

> "[j]uvenile courts are purely creatures of statute and have extremely limited jurisdiction. See Ex parte K.L.P., 868 So. 2d 454, 456 (Ala. Civ. App. 2003). That limited jurisdiction allows a juvenile court to make a disposition of a child in a dependency proceeding only after finding the child dependent. V.W. v. G.W., 990 So. 2d 414, 417 (Ala. Civ. App. 2008) (quoting K.B. v. Cleburne County Dep't of Human Res., 897 So. 2d 379, 389 (Ala. Civ. App. 2004) (Murdock, J., concurring in the result)) ('"[I]n order to make a disposition of a child in the context of a dependency proceeding, the child must in fact be dependent at the time of that disposition."')."

T.B. v. T.H., 30 So. 3d 429, 431 (Ala. Civ. App. 2009); see also J.W. v. T.D., 58 So. 3d 782, 792 (Ala. Civ. App. 2010) (stating that "[t]here is no provision in the Alabama Juvenile Justice Act [('the Act'), Ala. Code 1975, § 12-15-101 et seq.,] for the disposition of a child if the child is not proven to be dependent, and, in fact, the Act requires the juvenile court to dismiss the petition" if the child is not determined to be dependent).  The

mother further argues that a juvenile court may not make an order respecting visitation with a child if it has not found the child to be dependent. See C.C. v. B.L., 142 So. 3d 1126, 1129 (Ala. Civ. App. 2013) (holding that, after a juvenile court determines that a child is not dependent, that court "lack[s] jurisdiction to enter a judgment affecting the custody of [that] child, including visitation"). Those general principles are sound but do not compel that the mother's petition be granted.

The mother appears to contend that the juvenile court's failure to adjudicate the children to be dependent after the juvenile court declared a mistrial on November 13, 2024, amounts to a basis for the termination of its jurisdiction over the dependency actions. We disagree. First, we conclude that the juvenile court did not actually declare a mistrial.[8]

---

[8]We have found no reported cases in Alabama involving the declaration of a mistrial in a nonjury action. See Long v. City of Opelika, 37 Ala. App. 200, 203, 66 So. 2d 126, 129 (1953) ("The term 'mistrial' aptly applies to a case in which a jury is discharged without a verdict.") (emphasis added).

> "A high degree of 'manifest necessity' for the granting of a mistrial must be demonstrated before a mistrial should be granted. …

13

Instead, we consider the juvenile court's "mistrial" order to have imposed, sua sponte, a stay on the proceedings to protect the mother's right against self-incrimination under the Fifth Amendment to the Constitution of the United States. See Ex parte Edmondson, 238 So. 3d 85, 87-88 (Ala. Civ. App. 2017) (recognizing that a court has the inherent power to impose, sua sponte, a stay to protect a party's right against self-incrimination). The juvenile court did not conclude the adjudicatory trial, and the dependency actions were not terminated by the imposition of the stay; those actions remain pending before the juvenile court and, in fact, are set for an adjudicatory trial to be held in February 2025.

---

"... 'The entry of a mistrial is not lightly to be undertaken ... (T)he entry should be only a last resort, as in cases of otherwise ineradicable prejudice.' Thomas v. Ware, 44 Ala. App. 157, 161, 204 So. 2d 501 (1967) (emphasis in original). A mistrial indicates more than a 'mere erroneous ruling of law' and signifies such fundamental errors in a trial as to vitiate the result. Thomas, supra."

Wadsworth v. State, 439 So. 2d 790, 792 (Ala. Crim. App. 1983). We are unaware of law supporting the conclusion that the invocation of the right of self-incrimination in a civil case is a basis for a mistrial. See R.M. v. Elmore Cnty. Dep't of Hum. Res., 75 So. 3d 1195, 1204 (Ala. Civ. App. 2011) (explaining that a party's invocation of the right against self-incrimination in a juvenile termination-of-parental-rights proceeding "expose[s] [that parent] to an adverse inference of guilt").

14

Based on her reading of Ala. Code 1975, § 12-15-309, the mother contends that the juvenile court had only three options available to it after ceasing the trial on November 13, 2024: (1) to adjudicate dependency, (2) to dismiss the petition, or (3) to return the children to her custody, subject to conditions, and postpone adjudication. The mother is, again, incorrect. We agree that § 12-15-309(a) provides:

> "When the juvenile court finds that continued shelter care is not required for a child, the juvenile court shall order the return of the child, and in so doing, may impose one or more of the following conditions singly or in combination:
>
> "(1) Return the child to the custody of the parent, legal guardian, or legal custodian and, if necessary, place the child under the supervision of the Department of Human Resources.
>
> "(2) Place restrictions on travel, associations, or living conditions of the child pending the adjudicatory hearing."

However, § 12-15-309 is not the only statutory provision that governed the juvenile court at the time it entered the November 13, 2024, order.

At the time of the November 13, 2024, trial, the children had not been removed from the custody of the mother and placed into shelter care because DHR, the mother, and the maternal grandmother had agreed to an out-of-home non-foster-care safety plan. Because DHR's regulations

15

state that a safety plan may continue for only a period of 90 days before court intervention, see Ala. Admin. Code (Dep't of Hum. Res.), r. 660-5-34-.06(3)(a)2. (providing that "[t]he maximum timeframe that an Out-of-Home Non-Foster Care safety plan can be in place without court involvement is ninety (90) days"), DHR, in its dependency petitions, sought an order declaring the children dependent and placing the children in the custody of either the mother or some other person (presumably the maternal grandmother), under DHR's protective supervision. See § 12-15-301(9) (defining "protective supervision"). Thus, at the time of the November 13, 2024, trial, the juvenile court could have considered whether the children were dependent or, if the trial could not be concluded on that date, whether the evidence indicated that, at that time, the children should remain outside of the mother's home pending the completion of the trial, i.e., pendente lite. Once a dependency petition has been filed, a juvenile court is empowered to enter "an order of protection or restraint to protect the health or safety of a child subject to the proceeding." Ala. Code 1975, § 12-15-138. Such an order may address a parent's right to visit a child who is the subject of a juvenile proceeding by imposing restrictions upon that right. See Ala. Code 1975,

§ 12-15-140. Therefore, the juvenile court had jurisdiction to enter an order addressing the custody of the child and the mother's visitation rights despite its failure to conclude the adjudicatory trial or to find the child dependent.

To enter an order of protection or restraint pending resolution of the dependency petitions, however, the juvenile court was required to have provided notice to the mother, to have held a hearing on the issues, and to have had before it some evidence relating to the need for a pendente lite custody or visitation order restricting the mother's visitation with the children. See Ala. Code 1975, 12-15-139 (providing that "[a] protection or restraint order may be issued by the juvenile court, after notice and a hearing, upon proper showing by a preponderance of the evidence that an order is necessary to protect the health or safety of the child subject to a juvenile court proceeding or is otherwise in the best interests of the child"); see generally Ex parte R.W., 41 So. 3d 800, 803 (Ala. Civ. App. 2009) (plurality opinion); Ex parte Russell, 911 So. 2d 719, 725 (Ala. Civ. App. 2005). The materials appended to the mother's petitions do not indicate that any evidentiary hearing was held to address the need for an order of protection or restraint, and DHR has not

17

presented any argument or materials supporting a contrary conclusion. Because the materials appended to the mother's petitions support the mother's assertion that the juvenile court took no evidence to support what appears to be a pendente lite order of protection or restraint that de facto awards pendente lite custody of the children to the maternal grandmother by requiring continuation of the safety plan and restricts the mother's visitation with the children by requiring that, in compliance with the safety plan, that visitation be supervised and because DHR has not refuted the mother's procedural or factual averments, see Ex parte Turner, 840 So. 2d 132, 134-35 (Ala. 2002) (explaining that the failure of a respondent to challenge the factual assertions in a petition for the writ of mandamus requires an appellate court to consider those factual assertions to be true), the mother has established that she is entitled to a writ directing the juvenile court to set aside as void that portion of the November 13, 2024, order requiring the continuation of the safety-plan agreement restricting the mother's visitation with the children.[9]

---

[9]Because we are directing the juvenile court to set aside that portion of its November 13, 2024, order adopting the safety-plan agreement, we decline to consider the mother's argument that the safety-plan agreement was imposed upon her by DHR without "justification." See Ex parte Chatham, 109 So. 3d 662, 663 (Ala. Civ. App. 2012) (pretermitting

The mother is not, however, entitled to a writ compelling that her visitation be unsupervised or that the children be immediately returned to her custody. The juvenile court's November 13, 2024, order, insofar as it orders that the safety plan be continued is void, but, as far as the materials before this court suggest, the mother is still a voluntary signatory to the safety plan, which, therefore, is still in effect and continues to govern the mother's right to custody and to visitation.[10] We have rejected the mother's challenge to the jurisdiction of the juvenile court over the dependency actions; in addition, the dependency actions were not concluded by the entry of the 5th Amendment stay and remain pending before the juvenile court. Although the mother states in her

_____

other arguments made by the petitioner when resolution of one argument was dispositive of the petition for the writ of mandamus); Jackson v. Wicks, 139 So. 3d 813, 820 (Ala. Civ. App. 2013) (declining to consider additional issues when resolution of another a particular issue was determinative of the appeal).

[10]Although Ala. Admin. Code (Dep't of Hum. Res.), r. 660-5-34-.06(3)(a)2. provides that an out-of-home non-foster-care safety plan may remain in place no more than 90 days "without court involvement," that provision also states that "[c]ourt involvement occurs either by filing a dependency petition or by initiating contact with legal counsel to start legal action." DHR complied with the rule by filing the dependency petitions, and nothing in the rule provides that the safety plan "expires" or becomes null and void once the 90-day period expires.

petition that she did not seek a stay of the adjudicatory trial, she has not specifically challenged the juvenile court's sua sponte imposition of the stay. Thus, the juvenile court's sua sponte stay remains in place unless and until lifted or modified on its own motion or on motion of a party.

CL-2024-0942 -- PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

CL-2024-0943 -- PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.

Hanson and Fridy, JJ., concur.

Moore, P.J., concurs in part and concurs in the result in part, with opinion.

Lewis, J., concurs in the result, without opinion.

MOORE, Presiding Judge, concurring in part and concurring in the result in part.

On December 2, 2024, P.G. ("the mother") filed petitions for the writ of mandamus seeking the review of orders entered on November 13, 2024, and November 19, 2024, in two dependency actions pending before the Elmore Juvenile Court ("the juvenile court") relating to J.G. and H.S. ("the children"). The petitions were not filed within 14 days of the November 13, 2024, orders, so they were not timely as to those orders, see Ex parte T.M., 358 So. 3d 1155, 1159 (Ala. Civ. App. 2022); however, the petitions relating to those orders can nevertheless be considered by this court to the extent that they raise questions regarding whether the juvenile court had subject-matter jurisdiction to enter the orders, see Ex parte K.R., 210 So. 3d 1106, 1112 (Ala. 2016), and whether the orders are void for lack of due process. See Ex parte M.F.B., 228 So. 3d 460, 461-62 (Ala. Civ. App. 2017).

The juvenile court clearly had subject-matter jurisdiction over the dependency proceedings. See Ala. Code 1975, § 12-15-114(a). The juvenile court also clearly had the authority to enter the November 13, 2024, orders for the protection of the children without first finding the children dependent. See Ala. Code 1975, § 12-15-138 ("The juvenile court,

21

at any time after a dependency petition has been filed, or on an emergency basis, may enter an order of protection or restraint to protect the health or safety of a child subject to the proceeding."). However, before entering a protection order pursuant to § 12-15-138, the juvenile court was required to comply with Ala. Code 1975, § 12-15-139, which provides,

> "A protection or restraint order may be issued by the juvenile court, after notice and a hearing, upon proper showing by a preponderance of the evidence that an order is necessary to protect the health or safety of the child subject to a juvenile court proceeding or is otherwise in the best interests of the child."

The materials before this court indicate that the juvenile court did not follow the procedure set forth in § 12-15-139 before entering the November 13, 2024, orders.

The parties agree that the November 13, 2024, hearing was scheduled as a consolidated adjudicatory hearing to determine whether the children were dependent. See Ala. Code 1975, § 12-15-310. During the adjudicatory hearing, the juvenile court determined that the mother was raising her Fifth Amendment right to avoid self-incrimination and, as the main opinion concludes, the trial court sua sponte stayed the

22

proceedings, see Ex parte Rawls, 953 So. 2d 374 (Ala. 2006), continuing the adjudicatory hearing to February 12, 2025.

In the November 13, 2024, orders, the juvenile court further stated: "The current safety plan remains in place pending further order of the court." The juvenile court was referring to a safety plan that had been put in place when the children were removed from the mother's custody and in which the mother had agreed that the children would reside with their maternal grandmother, G.G. ("the maternal grandmother"). The safety plan also provided the mother with a schedule for visitation with the children, which visitation was to be supervised by the maternal grandmother. Section 12-15-140, Ala. Code 1975, governs the contents of a protection order and authorizes a juvenile court to determine the custody and residency of the allegedly dependent child as well as the conditions under which a parent may visit with the child. In substance, in the November 13, 2024, orders, the juvenile court ratified the safety plan and incorporated its residency and visitation terms by reference.

On November 18, 2024, the mother filed motions to vacate the November 13, 2024, orders arguing, among other things, that the juvenile court had infringed on her right to due process by "ordering supervised

23

visitation absent an opportunity to be heard." The juvenile court denied the motions, asserting that it had properly entered the orders for the protection of the children in accordance with "Ex parte M.J.W., 62 So. 3d 531, 535 (Ala. Civ. App. 2010) (Court should balance a parent's right against self-incrimination and the interest of the State in protecting children and upholding delay of dependency trial.)." However, in Ex parte M.J.W., 62 So. 3d 531 (Ala. Civ. App. 2010), this court did not hold that, when granting a stay of dependency proceedings, a juvenile court may enter a protection order without providing notice and an opportunity to be heard. This court held that, in deciding whether to stay the proceedings, a juvenile court should heavily weigh the safety needs of an allegedly dependent child and should enter pendente lite orders as are necessary to protect the child pending the stay, but the court did not expound on the proper procedure for rendering a pendente lite protection order. This court's holding in Ex parte M.J.W. does not authorize the entry of a protection order in a manner inconsistent with the procedure set forth in § 12-15-139.[11]

---

[11]Section 12-15-141, Ala. Code 1975, authorizes a juvenile court to enter an ex parte protection order in an emergency, but, under the circumstances of this case, that statute does not apply.

24

The juvenile court had a duty to provide the mother notice and an opportunity to be heard before entering the protection orders. Even after the motion to reconsider, the juvenile court has refused to provide the mother with the minimum due process to which she was entitled under § 12-15-139. The mother has no other adequate remedy to correct this due-process violation. Therefore, I concur that the petitions for the writ of mandamus should be granted to declare the November 13, 2024, orders to be void insofar as they order the current safety plan to remain in place and to order the juvenile court to comply with § 12-15-139 before entering any further protection orders.

The mother timely filed her petitions directed toward the November 19, 2024, orders. In those orders, the juvenile court impliedly denied the mother's motion to dismiss and her challenge to the propriety of the safety plan. I concur with the main opinion that the petitions should be denied insofar as they seek an order compelling the juvenile court to dismiss the cases; the dependency petitions contain sufficient factual allegations to invoke the dependency jurisdiction of the juvenile court. See Ala. Code 1975, § 12-15-121(c)(1). I do not address the implied ruling on the propriety of the safety plan. In granting the petition in part, this

court has voided that part of the November 13, 2024, orders incorporating the safety plan. Unless and until the juvenile court enters new orders ratifying and incorporating the safety plan, which it is not required to do, the propriety of the safety plan is a moot issue, and we have no justiciable controversy before us regarding its implementation. Therefore, I concur in the denial of the petitions relating to the November 19, 2024, orders.