THOMPSON, Presiding Judge.
This is the second time these parties have been before this court.
The procedural history of this case is set forth in H.C. v. S.L., 251 So.3d 793, 793-94 (Ala. Civ. App. 2017), as follows:
"On August 12, 2015, S.L. ('the paternal grandmother') filed in the Jefferson Juvenile Court, Bessemer Division ('the juvenile court'), a petition seeking to have N.L. ('the child') declared dependent and seeking an award of custody of *885 the child. The juvenile court entered an order on September 1, 2015, finding the child dependent and awarding the paternal grandmother pendente lite custody of the child. A similar order was entered on October 19, 2015. It is undisputed that H.C. ('the mother') had not been served at the time either of those orders was entered. The paternal grandmother filed an amended dependency petition on December 11, 2015.
"The juvenile court conducted a hearing on May 11, 2016, and July 5, 2016. At the close of that hearing, the juvenile court orally found the child dependent, cited reasons for that finding, and scheduled a dispositional hearing for December 2016, during which, it said, it would receive additional evidence from the parties. The juvenile court entered an order on July 8, 2016, in which it found the child dependent, awarded custody to the paternal grandmother, and ordered the attorneys for the parties and the child's guardian ad litem to agree on a visitation schedule for the mother for the fall of 2016. In that order, the juvenile court scheduled the dispositional hearing for December 15, 2016.
"The juvenile court conducted the dispositional hearing on December 15, 2016, and December 16, 2016. On December 22, 2016, the juvenile court entered a judgment in which it noted that the child had previously been found dependent, awarded custody of the child to the paternal grandmother, and closed the case.... [T]he mother timely appealed.
"The mother argue[d] on appeal that the juvenile court erred in awarding custody of the child to the paternal grandmother because, she [said], the child was not dependent at the time the December 22, 2016, dispositional judgment was entered."
This court noted that the juvenile court could make a custodial disposition of the child only if it determined that the child was dependent at the time it entered the December 22, 2016, judgment. See H.C. v. S.L., 251 So.3d at 794 (citing T.B. v. T.H., 30 So.3d 429, 431 (Ala. Civ. App. 2009), and V.W. v. G.W., 990 So.2d 414, 417 (Ala. Civ. App. 2008) ). In its December 22, 2016, judgment, the juvenile court had not made a finding regarding whether the child was dependent at the time of that judgment. This court held that, given the record, we could not conclude that a dependency determination was implicit in the juvenile court's December 22, 2016, judgment. 251 So.3d at 794 (citing, among other cases, S.L.M. v. S.C., 171 So.3d 656 (Ala. Civ. App. 2013), and J.P. v. S.S., 989 So.2d 591, 598 (Ala. Civ. App. 2008) ). This court explained:
"This court has reviewed the evidence in the record on appeal. It is not clear from our review whether the child remained dependent when the December 22, 2016, dispositional judgment was entered, and, therefore, this court cannot, as we did in J.P. v. S.S., supra, interpret the juvenile court's December 22, 2016, judgment as containing an implicit dependency determination. We conclude that the juvenile court must make a determination regarding whether the child remained dependent at the time the December 22, 2016, judgment was entered."
251 So.3d at 795. Accordingly, we reversed the December 22, 2016, judgment and remanded the cause to the juvenile court to enter a new judgment.
On October 11, 2017, the juvenile court entered a judgment on remand finding that, at the time of the December 22, 2016, judgment, the child had remained dependent. The mother again timely appealed.
The record indicates the following pertinent facts. The mother and the father never *886 married, but they lived together in Colorado. The child was born in Colorado in February 2010, and the mother, the father, and the child lived there together for some period. The paternal grandparents, the maternal grandmother, and the maternal grandfather all live in Alabama. The maternal grandmother and the maternal grandfather are divorced.
The evidence also indicated that the mother has had difficulty maintaining a stable residence in Colorado. The mother moves frequently, often every six months or so, with the exception of a period of two-and-a-half years during which she lived with a boyfriend. The child visited Alabama for extended periods when the mother lived with that boyfriend.
The mother has been consistently employed, although she has changed jobs several times in the years since the child's birth. At the time the December 22, 2016, judgment was entered, the mother had been employed, and remained employed, by the same casino for at least two years.
The mother also acknowledged that the Colorado equivalent of the Department of Human Resources had investigated her on two occasions during the child's life. According to the mother, a neighbor was unhappy when she purchased the child two pet rats, and the neighbor contacted the child-protection agency. The mother stated that a social worker showed up unannounced and searched her home but that the social worker did not see a problem. On the other occasion, the mother left the child with her roommate, and the child went to a neighbor's house without the roommate's knowledge. The mother testified that, on that, occasion, a social worker questioned her but that the Colorado child-protection agency did not open an investigation with regard to that incident.
The father did not travel to Alabama to attend any of the court hearings. The mother testified that the father had been living in a "sober house," i.e., a transitional home for those leaving substance-abuse treatment, for approximately four years. The mother explained that the father liked the environment of the home and that he shared the home with a series of roommates.
The mother explained that the distance between Alabama and Colorado prevented frequent visits between the child and his grandparents, and, therefore, she allowed the child to visit in Alabama for extended periods. Much of the evidence presented during the dependency hearing focused on the periods when the mother allowed the child to visit or reside in Alabama. The record indicates that, from 2011 through 2014, the child spent several months at a time in Alabama. The child spent time living in the home of the maternal grandmother and in the home of the paternal grandparents, and the grandparents worked together to arrange visits between them during the periods when the child was in Alabama.
The paternal grandmother testified that, in response to a conversation she had with the father in March 2015, she traveled to Colorado to bring the child to Alabama. The mother testified that the paternal grandmother had wanted to take the child to a family reunion. On March 31, 2015, the paternal grandmother returned to Alabama with the child, and the child has remained in her home since that time.
After she returned to Alabama with the child, the paternal grandmother placed the child in day care while she worked. The child often visited the maternal grandmother, and he visited separately with the maternal grandfather.
The mother testified that she had planned for the child to visit family in Alabama from May through August 2015. The mother stated that, after the paternal grandmother took the child to Alabama on *887 March 31, 2015, she decided to allow the child to remain in Alabama; she planned for the child to return to her home in Colorado as originally planned in August 2015. The mother explained that the child was to begin school in the fall of 2015, which would limit the time he could visit with his relatives in Alabama, and that, for that reason, she allowed the child to visit in Alabama at that time for a more extended period. In May 2015, the mother visited the child when the mother's sister traveled with the child to meet the mother in Las Vegas for a vacation.
The mother testified that she allowed the child to remain in Alabama and be enrolled in school here in August 2015 because, she said, at that time, she had recently suffered a miscarriage. The mother stated that she also ended her relationship with the father of the child she miscarried at that time and was in the process of moving to another home. The mother stated that the paternal grandmother offered to continue taking care of the child, and she stated that the paternal grandmother, the maternal grandmother, and she all agreed that it was better for the child to remain in Alabama at that time. The mother testified that she believed that that arrangement was to be short-term until she could become settled and that the paternal grandmother did not inform her that she was going to file the dependency action and seek custody of the child.
The paternal grandmother testified that the maternal grandmother told her in August 2015 that the mother was moving again and that she and the mother had decided that the child should remain in Alabama; the paternal grandmother stated that the period the child was to remain in Alabama was not specified. The maternal grandmother testified, however, that, at that time, she informed the paternal grandmother that the mother had suffered a miscarriage and had ended her relationship with her boyfriend and, therefore, that the mother needed to find another home. The paternal grandmother stated that she first learned of the mother's miscarriage in November 2015.
The mother testified that she did not become aware of the dependency action until late October 2015. The mother stated that she had moved into a new apartment in September 2015 and considered herself stable enough for the return of the child. The mother stated that she began asking the paternal grandmother about returning the child to her in September 2015 and that the paternal grandmother answered vaguely and stated that the child should remain where he was. The mother testified that she learned about the court action and the pendente lite custody orders only shortly before she traveled to Alabama in November 2015 to see the child.
The mother testified that she had been arrested in late July 2015 in connection with an incident that occurred with her former boyfriend after she suffered the miscarriage. The mother testified that, when she left the hospital after the miscarriage, her former boyfriend would not allow her in his home. She stated that she was arrested for sitting on his porch, crying and refusing to leave. In October 2015, the mother pleaded guilty to harassment in connection with that incident. The mother explained that she had been placed on one year's probation and that, if she completed a crisis-management class, the charge would be expunged from her record. However, at the time of the May 11, 2016, portion of the dependency hearing, the mother admitted that she had not yet started that crisis-management class. The mother had completed that class and her probationary period at the time of the December 16, 2016, hearing.
The mother testified that she began a new relationship with R.W. ("the boyfriend")
*888 in September or October 2016. The mother and the boyfriend were living together at the time of the summer 2016 dates of the dependency hearing. At the time of the December 16, 2016, hearing, the mother and the boyfriend were engaged to be married.
The mother hired a consultant to evaluate her home in Colorado. The consultant testified that the home in which the mother was living before May 2016 was not suitable for the child because of a number of safety issues, including a lack of a handrail on a spiral staircase and a hole in the floor of the mother's bedroom. The consultant testified that the mother had failed to recognize the inadequacy of that home for the child. The mother testified during the May 11, 2016, portion of the dependency hearing that the boyfriend was in Colorado moving into a new apartment in a duplex. That duplex apartment was later approved by the consultant as being safe and adequate for the child. In response to questioning from the juvenile court, the mother stated that she and her boyfriend had a four-month lease on the duplex apartment and that she planned to extend the lease after that four-month period. The mother explained that the landlord wanted the four-month term so that the term of the mother's lease would correspond with the term of the tenant in the other duplex apartment in the building. At the time of the December 16, 2016, hearing, the mother was still residing in that duplex apartment with the boyfriend, who was then her fiancé, and she had signed a year-long lease for that apartment.
At the conclusion of the first two days of testimony, the juvenile court orally found the child dependent and identified the bases upon which it found the child dependent. Those included that the mother had not resided in her new apartment for six months, that she had only a short-term lease on her new apartment, and that she was still on probation. The juvenile court then stated that it would conduct a dispositional hearing in approximately six months.
In its July 8, 2016, written order, the juvenile court found that the mother had allowed the paternal grandmother to take the child to Alabama; that, after her vacation, the mother had returned the child to the paternal grandmother; that the mother has had seven residences during the child's life and had been in her current residence for less than six months on a short-term lease; that Colorado social workers had investigated the mother; and that the mother had an unresolved criminal matter.
The dispositional portion of the hearing was conducted on December 15, 2016, and December 16, 2016. As indicated, at the December 2016 dispositional hearing, the mother presented evidence indicating that she had been in her apartment for more than six months and that she had executed a long-term lease. The mother presented evidence indicating that that apartment was safe and adequate for the child. The mother had also completed the crisis-management classes required by the Colorado court, and she had completed her term of probation. The mother remained employed, and she was engaged to be married to the boyfriend; the mother testified that the wedding was scheduled for January 1, 2017.
The parties presented evidence concerning the difficulties they had in communicating. It is undisputed that the mother and the paternal grandmother do not communicate well with each other. The mother expressed a preference for the maternal grandmother to act as an intermediary between her and the paternal grandmother. The mother alleged that she was not allowed to speak with the child as frequently as she would like and that the paternal grandmother often cut short their *889 conversations by telling the child to go to bed. The mother had also requested some of the child's schoolwork and a tooth that he had lost. The paternal grandmother stated that she had texted photographs of the child's report cards but had not sent the other paperwork or the tooth to the mother because she was saving them to give to the mother at the December 2016 hearing; however, when she testified at that hearing, she stated that she had not yet done so.
The paternal grandmother stated that the mother was to have visitation with the child over Thanksgiving 2016 but that the mother did not come to Alabama. The mother testified that her employer would not allow her the time off work over the Thanksgiving holiday, and that she needed to keep her job. The mother explained that she had missed work each time she traveled to Alabama for a court hearing and that, when she remained in Colorado during the Thanksgiving holidays, she was aware that she would need to attend the December 15 and December 16, 2016, hearing.
The paternal grandmother testified that the child was doing well in school and was healthy. She also stated that the child often visits the maternal grandmother and the maternal grandfather. The paternal grandmother also testified that the mother had spoken to the child about the court proceedings. The mother testified that she had told the child that she is doing all she can to regain custody of him. The child's guardian ad litem told the juvenile court that the child knew far more than he should about the dependency action and that she had spoken to both parties' attorneys to ask that both clients stop speaking with the child about the court proceeding.
On appeal of the October 11, 2017, judgment entered on remand, the mother argues that the juvenile court erred in determining that the child was dependent at the time of the disposition, i.e., she contends that the evidence does not support a finding that the child was dependent at the time of the December 22, 2016, judgment. See H.C. v. S.L., 251 So.3d at 794 (" ' "[I]n order to make a disposition of a child in the context of a dependency proceeding, the child must in fact be dependent at the time of that disposition." ' " (quoting V.W. v. G.W., 990 So.2d 414, 417 (Ala. Civ. App. 2008), quoting in turn K.B. v. Cleburne Cty. Dep't of Human Res., 897 So.2d 379, 389 (Ala. Civ. App. 2004) (Murdock, J., concurring in the result) ) ).
In Alabama, the Alabama Juvenile Justice Act, § 12-15-101 et seq., Ala. Code 1975, defines a dependent child as follows:
"(8) Dependent child. a. A child who has been adjudicated dependent by a juvenile court and is in need of care or supervision and meets any of the following circumstances:
"1. Whose parent, legal guardian, legal custodian, or other custodian subjects the child or any other child in the household to abuse, as defined in subdivision (2) of Section 12-15-301 or neglect as defined in subdivision (4) of Section 12-15-301, or allows the child to be so subjected.
"2. Who is without a parent, legal guardian, or legal custodian willing and able to provide for the care, support, or education of the child.
"3. Whose parent, legal guardian, legal custodian, or other custodian neglects or refuses, when able to do so or when the service is offered without charge, to provide or allow medical, surgical, or other care necessary for the health or well-being of the child.
"4. Whose parent, legal guardian, legal custodian, or other custodian fails, refuses, or neglects to send the child to school in accordance with the *890 terms of the compulsory school attendance laws of this state.
"5. Whose parent, legal guardian, legal custodian, or other custodian has abandoned the child, as defined in subdivision (1) of Section 12-15-301.
"6. Whose parent, legal guardian, legal custodian, or other custodian is unable or unwilling to discharge his or her responsibilities to and for the child.
"7. Who has been placed for care or adoption in violation of the law.
"8. Who, for any other cause, is in need of the care and protection of the state."
§ 12-15-102(8), Ala. Code 1975.
"Our standard of review of dependency determinations is well settled.
" 'A finding of dependency must be supported by clear and convincing evidence. § 12-15-65(f)[, Ala. Code 1975]; M.M.S. v. D.W., 735 So.2d 1230, 1233 (Ala. Civ. App. 1999). However, matters of dependency are within the sound discretion of the trial court, and a trial court's ruling on a dependency action in which evidence is presented ore tenus will not be reversed absent a showing that the ruling was plainly and palpably wrong. R.G. v. Calhoun County Dep't of Human Res., 716 So.2d 219 (Ala. Civ. App. 1998) ; G.C. v. G.D., 712 So.2d 1091 (Ala. Civ. App. 1997) ; and J.M. v. State Dep't of Human Res., 686 So.2d 1253 (Ala. Civ. App. 1996).'
" J.S.M. v. P.J., 902 So.2d 89, 95 (Ala. Civ. App. 2004). This court has stated that clear and convincing evidence is
" ' "[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
" '§ 6-11-20 [ (b) ](4), Ala. Code 1975.'
" L.M. v. D.D.F., 840 So.2d 171, 179 (Ala. Civ. App. 2002)."
L.A.C. v. T.S.C., 8 So.3d 322, 326-27 (Ala. Civ. App. 2008).
It is arguable that, because of the lengthy visits to Alabama, the child has not enjoyed a great deal of stability with the mother. Although we do not necessarily agree that the mother's choice to allow the young child to visit for extended periods was in the child's best interests, that choice would not, by itself, support a determination of dependency. See L.A.C. v. T.S.C., 8 So.3d at 328 (stating that the mother's choice to live with a married man in the presence of the children did not support a finding of dependency). Further, the mother testified that she allowed those long visits because, once the child began school, long visits with relatives would not be as workable. The child began school in the fall of 2015.
We need not reach the issue of whether the child was dependent at earlier periods during the child's life or at the time of the earlier dependency findings during the pendency of this action. The mother did not challenge the pendente lite dependency determinations. Rather, we must determine only whether the evidence supports the juvenile court's finding that the child was dependent at the time of the December 22, 2016, judgment. V.W. v. G.W., 990 So.2d at 417.
The record indicates that, at the time of the December 22, 2016, judgment, the mother had obtained an adequate home, had maintained that home for approximately seven months, and had signed a *891 long-term lease for that home. The mother has maintained employment throughout the child's life. At the time of the December 22, 2016, judgment, the mother had been employed with the same employer for approximately two years. In addition, the mother had successfully completed the probation period for her criminal charge, and she had been in a long-term relationship with her fiancé. Our review of the evidence does not reveal other facts indicating that, at the time of the December 22, 2016, judgment, the mother was unable to parent the child such that the child would be dependent, as that term is defined under § 12-15-102(8).
"[A] juvenile court's determination of dependency under Alabama law must be supported by 'clear and convincing' evidence." V.W. v. G.W., 990 So.2d at 417. Given the evidence in the record, we must hold that there is not clear and convincing evidence that the child was dependent at the time of the December 22, 2016, dispositional judgment. Accordingly, we must reverse the juvenile court's judgment. L.A.C. v. T.S.C., supra.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Pittman, Thomas, and Donaldson, JJ., concur.
Moore, J., concurs in the result, without writing.